Bernard FLAKE, Fred Kopp, and Dorothy E. Hohl and Karlyene Marie Bailey (substituted for Richard Hohl), for themselves and as representatives of classes with like interests, Appellees,

v.

Clifford BENNETT, L. D. Krueger, Dr. Robert Klein, Charles Thomas, William Brendel, Richard A. Shultz, and Robert B. Jehring, as members of the Board of Police Trustees pursuant to Section 411.5, Code of Iowa (1962), and as members of the Board of Trustees for the policemen's pension fund pursuant to Section 410.2, Code of Iowa (1962), and as representatives of classes with like interests; and Gene L. Needles (substituted for William F. Sueppel), and Paul Franzenburg, and Gerald Barnes, as members of the Board of Trustees pursuant to Section 97A.5, Code of Iowa, (1962), Appellants,

William J. Swassing, et al., and Board of Trustees of the Police Retirement System of the City of Council Bluffs, Iowa: Wm. Vance, et al.; William Shriver, et al.; City of Burlington, Iowa, and Wran Van Osdol; City of Fort Madison, Iowa; City of Cedar Falls, Iowa; City of Waterloo, Iowa; Board of Trustees of the Fire Retirement System of the City of Des Moines, Iowa, et al., and Board of Trustees of the Police Retirement System of the City of Des Moines, Iowa, et al.; and Board of Police Trustees of the City of Mason City, Iowa, and Board of Fire Trustees of the City of Mason City, Iowa, Intervenors-Appellants.

No. 52795.

Supreme Court of Iowa.

March 5, 1968.

Richard Turner, Atty. Gen., Robert B. Jehring, City Atty., Muscatine, and William F. Sueppel, Iowa City, for appellants and intervenors-appellants.

Stanley, Bloom, Mealy & Lande, Muscatine, for appellees.

BECKER, Justice.

Plaintiffs in this class action seek declaratory judgments declaring that certain upward pension adjustments are to be made promptly after July 4, 1965 and pensioners are entitled to such adjusted pension amounts for all periods on and after July 4, 1965, less any amount previously paid. Defendants and intervenors contend the pensions are to be adjusted effective July 1, 1966. The trial court held the act took effect in its entirety on July 4, 1965; the pension adjustments provided in each amendment are required to be computed and made promptly after July 4, 1965, using a computation date as of July 1, 1965;

plaintiffs and all in like class are entitled to be paid on such basis for all periods beginning on or after July 1, 1965, minus any part which has already been paid. We disagree.

The pension systems involved are found in Iowa Code, 1962; Chapter 97A, involving retirement compensation for peace officers and their beneficiaries; Chapter 410, involving retirement compensation for policemen and firemen appointed on or before March 2, 1934; and Chapter 411, involving retirement compensation for policemen and firemen appointed after March 2, 1934. The three chapters were amended by Acts of the 61st General Assembly, Chapters 112, 340 and 341 respectively.

None of these three laws specifies an effective date or contains a publication clause. They were signed by the Governor on the following dates: Chapter 341, March 9, 1965; Chapter 112, June 30, 1965; Chapter 340, May 3, 1965. They all became effective July 4, 1965. Constitution of the State of Iowa, Article III, section 26, Iowa Code, 1962, section 3.7.

The parties agree the three statutes are substantially identical. We will note significant differences as necessary. At present we consider Chapter 411, Code, 1962, as amended by Acts of 61st General Assembly, Regular Session, (1965) Chapter 341.

I. The effect of the amendatory act cannot be determined without a review of the purpose and structure of Chapter 411, Retirement Systems for Policemen and Firemen, as it existed prior to July 4, 1965. The chapter provides for retirement allowance to beneficiaries who may be members; i. e. retired or disabled firemen or policemen; or a member's designated beneficiaries.[1] Retired policemen and firemen with 22 years service and attained age of 55 may receive a retirement allowance

which shall be 50 per cent of their average income during the last five years of service before retirement. This retirement income is composed of the sum of the member's annuity (from accumulated contributions of a member) and a pension (from tax appropriations provided by the cities). Payments are payable on a monthly basis.

Since annuity funds come from withholding from the member's wages they are fixed at time of retirement. Pension sums come from tax sources under statutory formula and must absorb the impact of any unplanned or unexpected raise in benefits.

The annuity funds and pension funds are handled separately throughout. The statutes provide for two separate accounts for each, plus a separate account for expense of administration.

Thus before the 1965 amendment the retiree or his beneficiaries received annuities and pensions both of which were fixed by formula predicated on amounts fixed at time of retirement which did not change. No relief was afforded for the inflationary trend of modern life.

II. In 1965 the legislature provided an escalation clause which we now consider. Under this amendment a computation is to be made as of July 1 of each year for each retired person or beneficiary on the basis of what an equivalent worker now receives. This new computation is not the new pension. One-half the difference between the result of new formula and the old pension shall be added to the old pension. This shall be the new, presumably higher pension. In no event will the new result be allowed to go below the old pension. The explanation provided with House File 7 reads: "Each year the cost-of-living index rises. The income of the working man is generally adjusted to the price-cost squeeze because he is in a bargaining po-

1. The complicating death benefits, widows' and orphans' benefits and like provisions are eliminated as unnecessary to this opinion. The principles developed are applicable to those benefits as well as to the retirement allowance. All relate to similar actuarial and funding problems.

sition. The same cannot be said of the retired person on pension whose source of income is fixed and does not adjust to the rise in cost-of-living.

"This bill provides that pensions payable to retired members of the state's police, fire, and public safety departments, or their beneficiaries, will be adjusted according to salaries paid to active members of these departments, and would go far toward eliminating the hardships attendant to the fixed-pension buying power."

The recomputation is made each year as of July 1. As to payment Chapter 341, section 2(c) provides, "All monthly pensions adjusted as provided in this subsection shall be payable beginning on July 1 of the year in which the adjustment is made and shall continue in effect until the next following July 1 at which time the monthly pensions shall again be recomputed and all monthly pensions shall be adjusted in accordance with the recomputations."

The legislature did not specify the year in which the new payments would start. Plaintiff contends they should start with the first pay period from and after July 1, 1965. Defendants and intervenors contend the starting date should be July 1, 1966.

As part of the amendment the legislature provided a new raised schedule for contributions from working members to be paid into the annuity fund. The parties agree the new annuity contribution section became effective for all pay periods beginning on or after July 4, 1965.

III. Since the annuity portion of the retirement allowance is already fixed, all of the addition due to the use of the new formula must come from the pension fund which is dependent on tax sources. In order to provide tax moneys the 1962 (and present) statute provides: "411.11 Contributions by the city. 1. *On or before the first day of July in each year* the respective boards of trustees shall certify to the superintendent of public safety the amounts which will become due and payable during the year next following to the pension accumulation fund and the expense fund. The amounts so certified shall be included by the superintendent of public safety in his annual budget estimate. The amounts so certified shall be appropriated by the said cities and transferred to the retirement system for the ensuing year. Said cities shall annually levy a tax sufficient in amount to cover such appropriations. (emphasis supplied)

"2. To cover the requirements of the respective retirement systems for the period prior to the date when the first regular appropriation is due as provided in subsection 1 of this section, such amounts as shall be necessary to cover the needs of the retirement system shall be paid into the pension accumulation fund and expense fund by special appropriations to the retirement system."

Section 411.11 indicates the funding of the pension portion of the system, which is tax supported and absorbs the impact of any raises in benefits, is *in futuro* on an annual basis. Applied to our problem, the trustees are presumed to have estimated their needs and reported to the superintendent of public safety by July 1, 1965. The cities then appropriate the money and levy the tax. The legislature did not provide a method whereby the deficiencies created by the new formula could be taken care of by special appropriation. It did supply such a method in the original act for the first year of operation of the system by providing for a special appropriation in section 411.11(2). The failure to act similarly would indicate an intention to have the new formula take effect in 1966 rather than 1965.

IV. Chapter 341, Acts of the 61st General Assembly provides: "Pensions payable during this section shall be adjusted as follows:

"a. As of the first of July of each year, the monthly pensions authorized in this sec-

tion payable to each retired member and to each beneficiary, except children, of a deceased member shall be recomputed. * *

"b. As of the first of July of each year, the monthly pension payable to each surviving child in accordance with subsections eight (8), nine (9), and thirteen (13) of this section shall be adjusted to equal six percent of the monthly salary payable on such July first to an active member having the rank of first-class fireman, in the case of a child of a deceased member of the fire department, or of a first-class patrolman, in the case of a child of a deceased member of the police department. * * *

"c. *All monthly pensions adjusted as provided in this subsection shall be payable beginning on July 1 of the year in which the adjustment is made* and shall continue in effect until the next following July 1 at which time the monthly pensions shall again be recomputed and all monthly pensions shall be adjusted in accordance with the recomputations." (emphasis added)

Plaintiffs argue that the above dates only make the funds *payable* as of July 1st. Therefore application would not give the statute a retrospective effect if applied to the year 1965. Actual payment is to come after July 4th. We cannot agree. Not only would such construction be retrospective in that it would require payment of amounts newly accrued for three days prior to the effective date of the act, it would also require reestimation of funds needed to make the new payments for the coming year. This computation had already been made by the trustees on or before July 1, 1965 for the ensuing year and transmitted to the superintendent of public safety.

In Krueger v. Rheem Manufacturing Co., Iowa, 149 N.W.2d 142, 143, 144, we said: "I. Whether a statute operates retrospectively or prospectively is a matter of legislative intent. Within constitutional limits, the legislature may by clear and express language state its intention. Manilla Community School District etc. v. Halverson, 251 Iowa 496, 101 N.W.2d 705, 708. * * *

"II. 'As a rule all statutes are to be construed as prospective in operation unless the contrary is expressed or clearly implied. The rule is subject to an exception where the statute relates solely to remedies or procedure.' Hill v. Electronics Corp. of America, 253 Iowa 581, 113 N.W. 2d 313, 318; Bascom v. District Court of Cerro Gordo County, 231 Iowa 360, 1 N.W. 2d 220; Davis v. Jones, 247 Iowa 1031, 78 N.W.2d 6, 8; Schultz v. Gosselink, Iowa, 148 N.W.2d 434, 1967."

We do not believe these amendments were procedural in the sense referred to in the Krueger case. The foregoing rules militate against a retrospective application of the statute.

Here we should note a difference between Chapter 411 and Chapter 97A. The latter chapter provides a retirement, accident and disability system for highway patrol and bureau of criminal investigation officers. The two laws are very similar but Section 97A.11 provides: "Contributions by the state. *On or before the first day of November in each year,* the board of trustees shall certify to the state comptroller the amounts which will become due and payable during the year next following to the pension accumulation fund and the expense fund. The amounts so certified shall be paid by the state comptroller out of the funds appropriated for the Iowa department of public safety, to the treasurer of state, the same to be credited to the system for the ensuing year." (emphasis supplied)

The plan is apparently to fund the system on a calendar rather than a fiscal year basis. Funds for the last half of 1965 had been planned as early as the prior November. Funds for 1966, one-half under the old formula and one-half under the new formula could be planned as of November 1965. The prior date for planning for the last half of 1965 was long past when the act became effective. New funding by

special appropriation would be indicated for any result other than that reached here. No new appropriation, or equivalent, was provided.

V. The trial court held and plaintiffs argue: "It would be a strained and unreasonable interpretation to contend that the pension increases began in July, 1966, but the increased contributions to pay for these pension increases began in July, 1965."

This view misconceives the purposes of the two amendments. The more attractive pensions for present recipients must come entirely from tax funds. Additional withholding from present workers' salaries will not alleviate this situation in any way. The withheld amounts are the property of the donors and cannot be used for payment to present recipients. That is why the funds are separated into two different systems consisting of two accounts each. The workers' annuity funds are even protected from administrative expenses by creation of a separate fund for that purpose.

The increased withholding will help the cities in the future when present workers are retired. It cannot help them in meeting obligations payable currently. We need not strain for such construction. The result is compelled by the whole plan.

VI. Plaintiffs argue: "When a statute provides for a computation date earlier than the effective date of the statute, the entire statute becomes effective and operative on the effective date, using new computations made as of the earlier computation date.", citing Gulf Shipside Storage Corp. v. Thames, 217 La. 128, 46 So. 2d 62 (1950).

We do not consider the case applicable. No effort was made to apply new computations to dates before the act became effective. Further the case involved computations imposed under the Employment Compensation Law. It did not deal with the type of obligation we have here.

■ VII. We are reminded that Iowa Code, 1966, section 4.2 provides a statute is to be liberally construed to promote its objects and to assist the parties in obtaining justice. Rockenfield v. Kuhl, 242 Iowa 213, 46 N.W.2d 17, states: "It is elementary that laws creating pension rights are to be liberally construed with the view of promoting the objects of the legislature. 48 C.J. 787 (Pensions, § 3B) 40 Am.Jur., Pensions, § 4 (page 963). This of course means strict construction against the authority."

■ We do not believe this to be a narrow construction; nor does it defeat the object of the statutes, or justice. The question is not whether or not the recipients get the improved pension. The question is, when does the improved pension start? Before money can be paid out of a pension fund money must be paid into that same fund. A construction that makes the new pensions effective and payable July 1, 1966, allows the mechanics of funding the plan to be fully operative. A construction making the new pensions payable July 1, 1965 omits an essential feature of all pension plans; i. e. provision for funding. We must therefore conclude there was no intent to provide for payments without providing for a source of funds.

Evidence was offered tending to show that the annual additional cost if the amendments became effective July 1, 1965 would be $161,228. for the Des Moines retirement system. Plaintiffs objected to this evidence because the increased collections weren't shown. Division V indicates the presence or absence of increased annuity collections is immaterial. The increased costs cannot be reduced by collections that must be held to fund future obligations under the annuity portion of the plan.

Additional costs to the Des Moines system is, of course, much higher than to other smaller systems. However, smaller systems do not have as large a tax base for funding. We cite these figures to indicate the

problem of funding involves substantial sums and is a real problem for the pension trustees. It must be presumed the legislature intended such funding to be accomplished in an orderly manner. It set up the mechanics for orderly funding. If we construe the statute in such manner as to interrupt the legislative time table we defeat, rather than promote, the objects of the statute.

VIII. Defendants offered evidence by Mr. John Connors, President of the Des Moines Fire Fighters Association Local and Mr. Park Rinard, Executive Director of the Iowa League of Municipalities. Each is a registered lobbyist for his respective organization. Each testified generally as to his knowledge of the background and legislative maneuvering preceding passage of the act. The evidence was admitted subject to objection. The court was never ·asked to rule on the reserved rulings.

Defendants contend plaintiffs waived their objections by failure to require the court to rule. In Reed v. Bunger, 255 Iowa 322, 122 N.W.2d 290 we said: "Ruling on defendant's objection was reserved, apparently with defendant's consent. No request or demand for a ruling was made. The objection is therefore deemed waived. Error does not appear. Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 721, 107 N. W.2d 85, 93–94, and citations; Iowa Development Co. v.· Iowa State Highway Commission, 252 Iowa 978, 984, 108 N.W. 2d 487, 491." The evidence is therefore properly before us.

The trial court obviously gave little, if any, weight to that testimony for it was contra to its holding. We give no weight to such testimony as it was presented in this case since it amounted to no more than the understanding of the two lobbyists of the intent of those members of the legislature to whom they talked.

We do not decide the matter of admissibility of like evidence in cases that may arise under differing factual situations involving differing statutory construction problems. The general rules governing the admissibility of such testimony are found at II Sutherland, Statutory Construction, Chapter 50, Legislative History of Enactment, pages 481 to 507. The bewildering array of judicial pronouncements on the subject are exhaustively collected. The only conclusion that can be reached from a study of the cited material is that the problem must be faced in each case in light of its own peculiar facts.

We conclude the effective date for payment of retirement benefits under the new formulae was July 1, 1966. Reversed and remanded for entry of judgment consistent with this opinion.

LARSON, SNELL, STUART and RAWLINGS, JJ., concur.

GARFIELD, C. J., and MOORE and MASON, JJ., dissent.

LeGRAND, J., takes no part.