Tim D. COOK, Appellee,

v.

IOWA DEPARTMENT OF JOB SERVICE and Hawkeye Wholesale Grocery Company, Inc., Appellants.

No. 64764.

Supreme Court of Iowa.

Dec. 17, 1980.

Walter F. Maley, Blair H. Dewey, and Thomas J. McSweeney, Des Moines, for appellant Job Service.

Lois K. Cox of Legal Services Corp. of Iowa, Iowa City, for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, McGIVERIN, LARSON, and SCHULTZ, JJ.

UHLENHOPP, Justice.

This appeal involves three problems which arose in a proceeding for employment security benefits. It comes to us as a contested case under the Iowa Administrative Procedure Act, ch. 17A, The Code 1979 (IAPA).

Hawkeye Wholesale Grocery Company employed Tim D. Cook from June 22, 1977, until February 2, 1979. During this nineteen–month period Cook's duties consisted of delivering loads of groceries from Hawkeye's warehouse in Iowa City to various merchants in the Quad Cities area and unloading the merchandise at each stop. He worked full time.

Late in 1978, Cook notified Hawkeye that he had received numerous speeding citations, mostly for offenses during nonwork hours. He was concerned that the state would revoke his license. He stated on cross–examination:

Q. At what point did you become concerned then? A. Well, I'm aware of the law and I was just, when you get three speeding tickets or more they want your driver's license.

Q. This is what I'm getting at. You were aware of the habitual offender statute of the State of Iowa? A. That's right.

Q. Were you aware of that when you took employment? A. Yes. I didn't know the number of tickets it took cause that has changed I believe.

Q. You were aware that they had some statute in Iowa regarding repeat speeding [inaudible]? A. I'm sure, I'm sure the state does.

Hawkeye considered Cook a good employee and desired to keep him, but was unable to give him nondriving work. Hawkeye told him to continue his present work, and urged him not to get any more citations.

Hawkeye's insurance carrier informed Hawkeye by telephone, and later by letter on February 12, 1979, that the carrier would no longer cover Cook due to his driving record. After attempting to change the insurer's decision, Hawkeye informed Cook he could no longer drive for it. Hawkeye let Cook work the next week in the warehouse, and promised him a job if a position opened there. No position opened, and Cook's employment ended on February 2, 1979.

Cook filed a claim for employment security benefits. On February 26, 1979, a claims deputy for the Iowa Department of Job Service determined that Cook was discharged for misconduct and that he was entitled to benefits but was disqualified for them for five weeks pursuant to section 96.5(2)(a) of the Code.

Cook appealed to a hearing officer. On May 2, 1979, the officer held that Cook voluntarily terminated his employment without good cause attributable to his employer. Cook appealed to the appeals board, which affirmed and also denied a request for rehearing. Cook then petitioned for judicial review.

The district court reversed the decision of the appeals board, holding on the uncontroverted facts that Cook had not voluntarily quit his employment. The court further found that "the employer discharged the employee for good cause not attributable to the employer, and that the employee is entitled to unemployment benefits subject to certain disqualification." The court applied the law in effect at the time Cook filed the claim, disqualified Cook from five weeks of benefits amounting to $665, and ordered that benefits paid not be charged to Hawkeye's account.

Job Service appealed to this court, where it presents three issues for review: the district court erroneously (1) exercised de novo review (alternatively, the court erred in not finding the agency action was supported by substantial evidence); (2) failed to apply amendments to chapter 96 retrospectively; and (3) held that "any benefits shall not be charged to [Hawkeye's] account."

I. *Type of separation from employment.* Job Service held that Cook voluntarily quit his job; the district court held he was discharged for misconduct. This is the basic issue on the merits. First, however, we must consider the courts' scope of review of the decision by Job Service.

A. Judicial review of Cook's claim is governed by the IAPA. Section 17A.19(8) of that act sets forth the powers of the reviewing court:

8. The court *may* affirm the agency action or remand to the agency for further proceedings. The court *shall* reverse, modify, or grant any other appropriate relief from the agency action, equitable or legal and including declaratory relief, if substantial rights of the petitioner have been prejudiced because the agency action is:

a. In violation of constitutional or statutory provisions;

b. In excess of the statutory authority of the agency;

c. In violation of an agency rule;

d. Made upon unlawful procedure;

e. Affected by other error of law;

f. In a contested case, unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole; or

g. Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

(Emphasis added.)

■ Under clause f, a reviewing court looks to the entire record in the case to determine if substantial evidentiary support exists for the agency's decision. *Hawk v.*

*Jim Hawk Chevrolet–Buick, Inc.*, 282 N.W.2d 84, 87 (Iowa 1979); *City of Davenport v. Public Employment Relations Board*, 264 N.W.2d 307, 311 (Iowa 1978). The possibility that two inconsistent inferences may reasonably be drawn from the evidence does not itself deprive findings of substantial evidentiary support. *Ellis v. Iowa Department of Job Service*, 285 N.W.2d 153, 156 (Iowa 1979); *Briggs v. Board of Directors*, 282 N.W.2d 740, 743 (Iowa 1979); *City of Davenport*, 264 N.W.2d at 312; *State ex rel. Iowa Employment Security Commission v. Iowa Merit Employment Commission*, 231 N.W.2d 854, 858 (Iowa 1975); *Reisner v. Board of Trustees*, 203 N.W.2d 812, 814 (Iowa 1973).

■ Courts do not hear these cases de novo. *City of Davenport,*, 264 N.W.2d at 311; *Hoffman v. Iowa Department of Transportation*, 257 N.W.2d 22, 25 (Iowa 1977). The district court reviews the case to ascertain whether the agency acted arbitrarily or capriciously, committed an error of law, or otherwise violated section 17A.19(8). Its review is an appellate proceeding. *Jackson County Public Hospital v. Public Employment Relations Board*, 280 N.W.2d 426, 429 (Iowa 1979); *Iowa Public Service Co. v. Iowa State Commerce Commission*, 263 N.W.2d 766, 768 (Iowa 1978); *Carmichael v. Iowa State Highway Commission*, 156 N.W.2d 332, 334–37 (Iowa 1968). Likewise, this court's further review of the district court decision is not a factual de novo appeal of the Job Service decision, but is limited to the record made before the administrative hearing officer. *Community Action Research Group v. Iowa State Commerce Commission*, 275 N.W.2d 217, 218–19 (Iowa 1979); *Hoffman*, 257 N.W.2d at 25. As to the law, however, the applicable principle is stated thus in *Jackson County Public Hospital v. Public Employment Relations Board*, 280 N.W.2d 426, 429 (Iowa 1979):

Thus, when this court reviews a decision of a district court rendered pursuant to section 17A.19, the sole question is whether the district court correctly applied the law. In order to make that determination, this court applies the standards of

section 17A.19(8) to the agency action to determine whether this court's conclusions are the same as those of the district court. If the conclusions are the same, affirmance is in order. If they are not, reversal may be required.

■ B. In this case the district court found as a matter of law that Job Service incorrectly held Cook voluntarily quit and that instead, Hawkeye discharged Cook for misconduct. We agree. The facts were not in dispute. Alternative inferences from the facts did not appear. The only question was a legal one: the meaning of "voluntary quitting" and "misconduct" under the law. This involved an issue of law which was open to the judiciary. *Ellis*, 285 N.W.2d at 156; *West Des Moines Education Association v. Public Employment Relations Board*, 266 N.W.2d 118, 124 (Iowa 1978); *Hanson v. Iowa State Commerce Commission*, 227 N.W.2d 157, 162 (Iowa 1975).

In determining whether Cook's termination of employment constituted "voluntary quitting," we, like the district court, first look to section 96.5(1) of the Code which states:

Causes: An individual shall be disqualified for benefits:

(1) *Voluntary quitting.* If he or she has left his or her work voluntarily without good cause attributable to his or her employer, if so found by the department.

We next look to the Iowa Administrative Code. The definition of "voluntary quit" found there, and relied on by the district court, states:

In general, a voluntary quit means discontinuing the employment because the employee no longer desires to remain in the relationship of an employee with the employer from whom the employee has separated. The following reasons for a voluntary quit shall be presumed to be without good cause attributable to the employer. . . .

370 I.A.C. § 4.25(96). The section lists forty–one types of situations in which the separation is not attributable to the employer, none of which covers the undisputed facts of this case. Cook did not quit because of

unsafe working conditions or other improper acts on Hawkeye's part. *See id.* § 4.26(96). Nor did he quit because he desired to do so. Unquestionably this was not a case of a "voluntary quit."

The district court held that Hawkeye discharged Cook for misconduct, that Hawkeye was forced to do so because of Cook's self–inflicted uninsurability. As stated in 370 I.A.C. § 4.32–(1)(*a*), "*Misconduct* is defined as a deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment." In his testimony Cook himself brought out the reason Hawkeye had to let him go: he was a truck driver, but his repeated traffic violations rendered him uninsurable and thus unemployable. While he received most of his driving citations during non–work hours and in his personal car, they all bore directly on his ability to work for Hawkeye. Cook knew this, and even expressed fear to Hawkeye about losing his license. He does not claim that anyone forced him to violate the laws of the road, yet he persisted in doing so. The district court correctly construed the law in classifying this case as a separation for misconduct, and in doing so the court did not exercise de novo factual review.

II. *Applicable law on temporary disqualification for benefits.* The district court held that since Cook was discharged for misconduct, he was entitled to unemployment benefits but was subject to temporary disqualification. The law on disqualification changed, however, between the time Hawkeye discharged Cook and the time of the decision by the district court. The court applied the law in effect at the time Cook filed the claim. That law is found in section 96.5(2)(*a*) of the Code of 1979, requiring disqualification from one to nine weeks of benefits to an employee discharged for misconduct. The section was subsequently amended to read as follows by 1979 Sess., 68th G.A., ch. 33, § 10:

> The individual shall be disqualified for benefits until the individual has worked in and has been paid wages for insured work equal to ten times the individual's

weekly benefit amount, provided the individual is otherwise eligible.

The amendment took effect on July 1, 1979. *Id.* § 35. The discharge occurred on February 2, 1979. On February 26, 1979, a Job Service claims deputy held that the discharge was for misconduct. On May 2, 1979, a hearing officer held that Cook voluntarily quit. On August 17, 1979, the appeal board affirmed the hearing officer's decision. On May 5, 1980, the district court decided the discharge was for misconduct.

Section 4.5 of the Code sets forth the general rule that "A statute is presumed to be prospective in its operation unless expressly made retrospective." *See In re Estate of Parsons*, 272 N.W.2d 16, 17, 19 (Iowa 1978); *In re Estate of Hoover*, 251 N.W.2d 529, 531 (Iowa 1977); *State ex rel. Turner v. Limbrecht*, 246 N.W.2d 330, 332 (Iowa 1976); *Walker State Bank v. Chipokas*, 228 N.W.2d 49, 51 (Iowa 1975); *Flake v. Bennett*, 261 Iowa 1005, 1011, 156 N.W.2d 849, 853 (1968); *Krueger v. Rheem Manufacturing Co.*, 260 Iowa 678, 681, 149 N.W.2d 142, 144 (1967); *Schultz v. Gosselink*, 260 Iowa 115, 118, 148 N.W.2d 434, 436 (1967). This provision evinces a general intent on the part of the General Assembly that substantive enactments and amendments shall operate prospectively, *Parsons*, 272 N.W.2d at 17–18; *Schultz*, 260 Iowa at 118, 148 N.W.2d at 436, and militates in favor of prospective application of the new sanctions for misconduct separations such as this one. *See Green v. Iowa Department of Job Service*, 299 N.W.2d 651 (Iowa 1980).

Countering this analysis, Job Service cites *Needham Packing Co. v. Iowa Employment Security Commission*, 255 Iowa 437, 123 N.W.2d 1 (1963). There this court stated, "The point of law presented is as to which amendment is applicable to the present situation. Is it the one in effect at the time the claim was filed or the one at the time the Commission intends to act thereon?" *Id.* at 439, 123 N.W.2d at 2. This court went on to hold that the legislation forfeiting wage credits was retrospective in nature so that the law in effect at the time of

decision controlled. The court made clear, however, that "it is the manifest intent of the legislature that determines whether a statute amending or repealing another statute is to apply only to the future or is to affect matters pending at the time of its enactment." *Id.* at 441, 123 N.W.2d at 3.

After *Needham* was decided, the General Assembly enacted section 4.5. The result in *Needham* would be different under that section.

Job Service also relies on *Buchhop v. General Growth Properties*, 235 N.W.2d 301 (Iowa 1975). That opinion, however, contains the following: "But in any event, our relevant rule holds when a law is repealed the rescinded act is operationally deemed never to have existed. In so ruling here we do not interpret § 4.13, The Code, which was not effective until 1971." *Id.* at 304 (citations omitted). Section 4.13 deals with retrospective application of *decreased* penalties for offenses.

In addition Job Service cites the recent case of *Franklin v. Iowa Department of Job Service*, 277 N.W.2d 877 (Iowa 1979). We there stated:

> In 1978, however, the chapter was amended so that "[t]he person who is liable to repay the benefits may select the method of repayment." § 96.3(7), The Code 1979.
>
> We believe the repayment provision of section 96.3(7) is applicable to amounts Franklin still owes Job Service. On remand Franklin should have the option to select which statutory method of repayment will be applicable to the balance outstanding on the overpayment.

*Id.* at 881–82. That case presented a different situation from this one. Retrospectivity was not involved. The case involved repayment of amounts still owed, and Franklin was given the choice of the method of repayment in accordance with a new statute. That statute was applied prospectively. Here, although Job Service claims otherwise, we are actually looking at an increase in a penalty, applied retrospectively. The reasoning in *Franklin* is not helpful to the position of Job Service.

In addition, Job Service cites *State ex rel. Turner v. Limbrecht*, 246 N.W.2d 330 (Iowa 1976). Its reliance on that decision does not appear well founded, for even under the *Limbrecht* tests the amendment involved here would not be retrospectively applied.

■ Section 4.5 controls this issue of the applicable law on sanctions. The trial court properly decided that the amendment to chapter 96 only applies prospectively. Job Service, however, rather than the courts, must set the number of weeks of disqualification for misconduct.

III. *Charging benefits to employer's account.* Job Service argues finally that if Cook is granted benefits, they should be charged against Hawkeye's account pursuant to section 96.7(3)(*a*)(2). That section reads as part:

> The amount of regular benefits plus fifty percent of the amount of extended benefits, as determined under section 96.-29, paid to an eligible individual *shall* be charged against the account of the employers in the base period in the inverse chronological order in which the employment of such individual occurred.

(Emphasis added.)

■ Job Service has correctly interpreted the statute by relying on its mandatory language. We do not find any contrary statutory provision. Hence Hawkeye's account must be charged.

We return the case to Job Service for the purposes of allowing Cook employment security benefits, setting the number of his weeks of disqualification for benefits on account of the discharge for misconduct, and charging the benefits to Hawkeye's account in accordance with section 96.7(3)(*a*)(2).

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.