**Al BOEKELMAN, Richard Groen and Ernie Hutchison, Appellants,**

v.

**CITY OF ALGONA, Iowa, and Board of Trustees of Policemen's Pension Fund, namely, James Voigt, Fred Diekmann, Jr., and Vern McClure, Appellees.**

No. 65102.

Supreme Court of Iowa.

Oct. 21, 1981.

Leo J. Cassel and Michael McEnroe of McMahon, Cassel, McMahon & McEnroe, Algona, for appellants.

Gregg A. Buchanan of Hutchison, Buchanan, McClure & Dotson, Algona, for appellees.

Considered by LeGRAND, P. J., and HARRIS, McCORMICK, ALLBEE and LARSON, JJ.

ALLBEE, Justice.

The sole issue in this case concerns the amount of pension benefits payable to retired or disabled firemen and policemen under section 410.6, The Code 1979.[1] Prior to 1978, plaintiffs, retired members of the Algona police department, had been receiving annual pension increases equivalent to

---

1. Chapter 410 applies to policemen and firemen who were appointed on or before March 2, 1934, while a separate statutory pension plan, contained in chapter 411, applies to those appointed after that date. *See* note under heading of chapter 411, The Code 1979.

one-half of the increase in pay for current active duty policemen of the same rank held by the pensioners at their retirement. In January 1978, however, the trustees of Algona's police pension fund determined that they had previously misinterpreted the statute and that the annual pension increases were limited by section 410.6 to one-fourth of the current pay increase. Plaintiffs thereupon sought a declaratory judgment that the board's earlier reading of the statute was the correct interpretation. Trial court ruled, however, that the board's present interpretation of section 410.6 was the proper one. Upon plaintiffs' appeal, we affirm.

Before 1965, section 410.6 provided only for a monthly pension equaling one-half of the monthly pay received at the time of retirement. *See* § 410.6, The Code 1962. Thus, the pension was a fixed amount that could not be adjusted to help pensioners cope with increases in the cost of living. To remedy that situation, the legislature in 1965 amended section 410.6, along with the corresponding provisions of two similar statutory pension plans, to provide for annual pension readjustments.[2] *See* 1965 Sess., 61st G.A., ch. 112, 340, 341.

The basic pension formula—one-half of the monthly pay at retirement—was retained in the first paragraph of section 410.6 when the 1965 amendment was added. *See* 1965 Sess., 61st G.A., ch. 340; § 410.6, The Code 1966. Thus, in the 1979 Code, section 410.6 appeared in pertinent part as follows:[3]

[Eligible persons] upon retirement shall be paid out of the pension fund of such [fire or police] department a monthly pension equal to one-half the amount of salary received by him monthly at the date he actually retires from said department. . . . [Hereinafter, this paragraph will be referred to as the first paragraph of section 410.6.]

. . . .

Upon the adoption of any increase in pension benefits the amount payable to each member as his regular pension shall be increased by an amount equal to fifty percent of any increase in the pension benefits for the rank at which the member retired. [Hereinafter, this paragraph will be referred to as the second paragraph of section 410.6.]

Pensions payable under this chapter shall be adjusted as follows:

1. As of the first of July each year, the monthly pension authorized in this chapter payable to each retired member and to each beneficiary, except children, of a deceased member shall be recomputed. The applicable formulas authorized in this chapter which were used to compute the retired member's or beneficiary's pension at the time of retirement or death shall be used in the recomputation except the earnable compensation payable on each July 1 to an active member having the same or equivalent rank or position as was held by such retired or deceased member at the time of retirement or death, shall be used in lieu of the final compensation which the retired or deceased member was receiving at the time of retirement or death. At no time shall the monthly pension or payment to the beneficiary be less than the amount which was paid at the time of such member's retirement or death. [Hereinafter, this paragraph will be referred to as the third paragraph of section 410.6.]

This bill provides that pensions payable to retired members of the state's police, fire, and public safety departments, or their beneficiaries, will be adjusted according to salaries paid to active members of these departments, and would go far toward eliminating the hardships attendant to the fixed-pension buying power.

H.F. 7, 31, 39, House Files, 61st G.A. (1965).

2. When the 1965 amendments to the pension plans in chapters 97A, 410 and 411 were introduced, each was supplemented by the following identically worded explanation:

Each year, the cost-of-living index rises. The income of the working man is generally adjusted to the price-cost squeeze because he is in a bargaining position. The same cannot be said of the retired person on pension whose source of income is fixed and does not adjust to the rise in cost-of-living.

3. The quoted portions of this section remain unchanged in the 1981 Code.

A concrete example will be useful to illustrate the two different constructions given the statute by the parties. We will hypothesize that a police officer retired in 1970, when he was earning $1000 per month and held the rank of sergeant. The parties agree that under the basic pension formula, his initial pension would be $500 per month, i. e., one-half of his monthly pay at retirement. We next assume that in 1971, sergeants on *active* duty in the same department started earning $1100 per month, a pay increase of $100 monthly. Under the recomputation procedure set forth in the third paragraph of section 410.6, the same formula applicable in 1970 (one-half of the monthly pay) would be used, but $1100 would be substituted for the $1000 earned at retirement. Thus, the 1971 recomputed pension would be $550, i. e., one-half of $1100. At this point, the views of the parties diverge. Plaintiffs assert that the recomputed pension *is* the new pension; thus, under their view, the 1970 retiree would be entitled to the full $50 increase from $500 to $550. According to this interpretation, in any given year, all retirees from the same rank would receive the same pension, regardless of when they retired. Defendants, however, contend that the recomputation serves only as a basis for determining the "increase in pension benefits" referred to in the second paragraph of section 410.6. Under defendants' view, that paragraph would limit the 1970 retiree's *actual* monthly pension increase to $25, i. e., fifty percent of the $50 "increase in pension benefits."[4]

Plaintiffs attribute a different purpose to the second paragraph of section 410.6. They argue that "the adoption of [an] increase in pension benefits" refers not to the mandatory annual readjustment outlined in the third paragraph, but rather to discretionary legislative changes in the basic pension formula set forth in the *first* paragraph of section 410.6.[5] For example, if the legislature in 1971 had changed the basic statutory pension formula of the first paragraph from fifty percent ("one-half") to sixty percent of pay at retirement, plaintiffs' view of the second paragraph is that it would give the 1970 retiree the benefit of half of that ten percent increase. Thus, his basic pension formula would increase to fifty-five percent.

We find that the second paragraph of section 410.6 is ambiguous, and that either of the parties' interpretations could logically be drawn from a reading of the statute. Therefore, our task is to determine the meaning intended by the legislature. Both parties have made interesting arguments, including several relating to legislative intent, in support of their respective interpretations. We have given these arguments careful consideration. Nevertheless, because research into the legislative history of section 410.6 has disclosed information which firmly convinces us that defendants' interpretation of the statute corresponds with the legislative intent, we will not prolong this opinion by discussing the merits of each argument made by the parties.[6]

4. It can be seen that under plaintiffs' view, the actual pension increase would be one-half of the current pay increase, while under defendants' view the pension increase would be one-fourth of the pay increase.

5. As mentioned earlier, the basic pension formula, both before and after the 1965 amendments, has been one-half of the monthly pay at retirement.

6. Although we do not address most of the parties' arguments, plaintiffs' contention that our decision in *Flake v. Bennett*, 261 Iowa 1005, 156 N.W.2d 849 (1968) supports their position requires some comment. The issue in *Flake* was whether, under the escalation clauses enacted by the 1965 amendments to the pension

plans in chapters 410, 411 and 97A, the increased benefits were first payable in 1965 or 1966. Plaintiffs rely on dictum in that case, along with a subsequent amendment to section 410.6, to fashion an argument that under chapter 410 they are entitled to pension increases equaling one-half, rather than one-fourth, of the current pay increase for rank held at retirement. The language they rely on in *Flake*, however, is clearly nothing more than a judicial paraphrasing of unambiguous language in chapter 411. *See Flake*, 261 Iowa at 1007–08, 156 N.W.2d at 851; § 411.6(14)(a), The Code 1966. Therefore, the *Flake* dictum is not germane to section 410.6, which is differently and more ambiguously worded.

It is proper for a court to take judicial notice of the background of a statute to aid in determining legislative intent. *Burke v. Board of Trustees*, 308 N.W.2d 21, 24 (Iowa 1981). Here, the history of a 1970 amendment to section 410.6 provides the key to determining whether the second paragraph of that section applies to annual pension readjustments or to legislative changes in the basic pension formula.

Before 1970, the second paragraph of section 410.6 provided that

[u]pon the adoption of any increase in pension benefits effective subsequent to the date of a member's retirement, the amount payable to each member as his regular pension shall be increased by an amount equal to *twenty-five percent* of any increase in the pension benefits for the rank at which the member retired.

§ 410.6, The Code 1966 (emphasis added). In 1970, a bill was passed solely to change that provision to read "fifty percent" instead of "twenty-five percent." *See* 1970 Sess., 63rd G.A., ch. 1193. The bill was titled "[a]n act *relating to annual readjustment* of pensions, pension payments and pension benefits for disabled and retired firemen and policemen." *Id.* (emphasis added). Defendants argue that the title alone is sufficient to indicate that their interpretation of the statute is correct. Plaintiffs, however, note that a legislative change in the basic pension formula would necessarily affect the annual pension readjustment, *see* § 410.6(1), and therefore the bill could "relat[e] to annual readjustment of pensions" even though it applied directly to changes in the basic statutory pension formula. We agree with plaintiffs that the title alone is not conclusive in this case. *Cf. Motor Club of Iowa v. Department of Transportation*, 265 N.W.2d 151, 153 (Iowa 1978) (title of bill need only be "reasonably connected" with subjects of bill).

Another item connected with passage of the 1970 amendment, however, does clearly indicate the legislature's understanding of the meaning of the second paragraph of section 410.6. At the time the 1970 bill was being considered, the legislative fiscal director was asked to conduct a study projecting the fiscal effect in dollars that would result from changing "twenty-five percent" to "fifty percent" in the second paragraph. *See* Fiscal Note to S.F. 178, Senate Bills, 1970 Sess., 63rd G.A. This report, filed April 16, 1969, consisted of specific dollar figures showing the increased cost statewide during the first year following enactment of the proposed change and in each of the four years thereafter. *See id.*

If the second paragraph of section 410.6 applied only to discretionary legislative changes in the basic pension formula, as plaintiffs contend, there would have been no way to project the financial impact of the 1970 amendment. Its financial impact would have depended on future discretionary legislative changes to that basic formula, which may never be made (and indeed never have been made). In the absence of such a change in the underlying formula, the amendment changing "twenty-five percent" to "fifty percent" would have had absolutely *no* fiscal impact.

On the other hand, if the second paragraph applied to the mandatory annual readjustments, as defendants contend, there *would* be an immediate, projectable fiscal effect. We therefore conclude that defendants' interpretation of the statute coincides with the legislature's intent.[7]

Accordingly, we hold that the "increase in pension benefits" referred to in the second paragraph of section 410.6 means the increase resulting from calculation of the annual readjustment under the third paragraph. Thus, each year a pensioner should receive one-half of that pension benefit increase, which, in net effect, amounts to one-fourth of the current increase in active duty pay for the rank at which he retired. Trial court's ruling is affirmed.

AFFIRMED.

---

7. If there is yet a third reading of the statute which we have not discerned and which the legislature actually intended, we would invite the legislature to amend section 410.6 so as to make its meaning clear.