FAIRFIELD TOYOTA, INC.,
Petitioner–Appellee,

v.

Darrin S. BRUEGGE and the Employment Appeal Board, Respondents–Appellants.

No. 88–1881.

Court of Appeals of Iowa.

Oct. 5, 1989.

As Corrected Oct. 11, 1989.

Blair H. Dewey and William C. Whitten, Employment Appeal Bd., for respondents-appellants.

Craig R. Foss of Foss, Kuiken & Gookin, P.C., Fairfield, for petitioner-appellee.

Considered by DONIELSON, P.J., and SCHLEGEL and HAYDEN, JJ., but decided en banc.

SCHLEGEL, Judge.

Respondent Darrin S. Bruegge was employed as a mechanic by petitioner Fairfield Toyota, Inc. As part of his job, it was necessary for Bruegge to road test dealer and customer cars. In June 1985 Fairfield Toyota received notice from its insurance company indicating its coverage of Bruegge was in jeopardy. At the time this notice was issued Bruegge had one speeding conviction, two convictions for deliberate tire squealing, and one traffic accident for which he was not charged. Bruegge's supervisor, Dennis Byers, spoke to him about his driving record. At this time Bruegge was first informed that insurability was a prerequisite for his continued employment. On June 20, 1986, Bruegge was involved in another accident when he went into a ditch to avoid hitting a deer. The insurance company informed Byers it

would no longer cover Bruegge. Bruegge was asked to resign from his job.

Bruegge filed a claim for unemployment compensation. A Job Service representative denied him benefits on the ground that he had been discharged for misconduct. Bruegge sought an administrative hearing. The hearing officer found Bruegge engaged in misconduct by becoming uninsurable. The hearing officer's decision appears to be predicated upon two bases. He concluded misconduct is found in the fact of Bruegge's uninsurability and need not be derived from the circumstances of his separate accidents and traffic violations. The hearing officer proceeded to examine Bruegge's last accident and concluded he had not been driving defensively and could have avoided the accident. The hearing officer's finding of misconduct resulted in a denial of benefits for Bruegge.

Bruegge appealed to the Employment Appeal Board. The board reversed the hearing officer's finding of misconduct and found, for the most part, that Bruegge's actions had been outside his control and his driving record did not reflect a series of violations of the law or a disregard of the lawful operation of a motor vehicle. In addition, the board found the decision to terminate Bruegge had been premised in part upon his employer's interest in reducing or maintaining its insurance costs.

Fairfield Toyota filed a petition for judicial review. The district court reversed the board and reinstated the decision of the hearing officer. The court found Bruegge's driving record, which rendered him uninsurable, constituted misconduct. The court found no support for the board's conclusion that Bruegge's discharge had been based on his employer's economic concerns.

Bruegge now appeals the decision of the district court. He contends there was substantial evidence in the record to sustain the board's decision. He argues the district court erred as a matter of law in finding misconduct in this case.

■■■ Our scope of review in cases arising out of the Iowa Administrative Procedure Act is limited under Iowa Code section 17A.20 to the correction of errors at law. *Foods, Inc. v. Iowa Civil Rights Commission*, 318 N.W.2d 162, 165 (Iowa 1982). The review function of the district court under section 17A.19 is to correct errors of law which are specified in section 17A.19(8). When we review decisions of the district court which were rendered in its capacity as an appellate body under section 17A.19, the issue for our determination is whether the district court correctly applied the law. *Budding v. Iowa Department of Job Service*, 337 N.W.2d 219, 221 (Iowa App.1983). In order to make that determination, we apply the standards of section 17A.19(8) to the agency action to determine whether this court's conclusions are the same as those of the district court. *Jackson County Public Hospital v. Public Employment Relations Board*, 280 N.W.2d 426, 429–30 (Iowa 1979).

There are two bases for reversing the denial of benefits by the district court. The first relates to the deference given to the fact findings of the Employment Appeal Board. The second relates to the definition of misconduct and the failure to show that misconduct existed as a matter of law.

■■■ I. *Fact Findings.* We, like the district court, are bound by the agency's fact findings if those findings are supported by substantial evidence. Evidence is substantial if a reasonable person would find it adequate for reaching a decision. *Peoples Memorial Hospital v. Iowa Civil Rights Comm'n*, 322 N.W.2d 87, 91 (Iowa 1982). The Employment Appeal Board found: "In this case, the claimant's driving record does not reflect a series of violations of the law or disregard of the lawful operation of a motor vehicle, as was the case in *Cook*." On the basis of the binding effect of the factual determination, both the district court and this court are obligated to affirm the finding of the Employment Appeal Board that there was no misconduct.

II. *Misconduct.* Iowa Code section 96.-5(2) provides that a claimant is disqualified from unemployment benefits "[i]f the department finds that the individual has been

discharged for misconduct in connection with the individual's employment."

Misconduct is defined by 345 Iowa Administrative Code 4.32(1) as:

[A] deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the disqualification provision as being limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has a right to expect of employees, or in carelessness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.

This definition has been accepted by the Iowa Supreme Court as accurately reflecting the intent of the legislature. *Huntoon v. Iowa Dept. of Job Service,* 275 N.W.2d 445, 448 (Iowa 1979), *cert. denied,* 444 U.S. 852, 100 S.Ct. 105, 62 L.Ed.2d 68 (1979).

■ As the definition suggests, misconduct must be substantial in nature to support a disqualification from unemployment benefits. Misconduct serious enough to warrant the discharge of an employee is not necessarily serious enough to warrant a denial of benefits. *Budding,* 337 N.W.2d at 222.

The only Iowa case to deal specifically with uninsurability as misconduct is *Cook v. Iowa Department of Job Service,* 299 N.W.2d 698 (Iowa 1980). In *Cook,* the claimant was a truck driver who had amassed a number of speeding violations. He was in danger of losing his license. He was discharged. The principle question involved in the case was whether he voluntarily quit or was discharged for misconduct. In ruling that he was discharged for misconduct, the Iowa court stated:

While he received most of his driving citations during non-work hours and in his personal car, they all bore directly on his ability to work for Hawkeye. Cook knew this, and even expressed fear to Hawkeye about losing his license. He does not claim that anyone forced him to violate the laws of the road, yet he persisted in doing so.

*Id.* at 702.

■ *Cook* is distinguishable from this case as the Employment Appeal Board found. There is no evidence that from the time it was made known to Bruegge that his driving record was a problem, he was guilty of willful violations of the traffic laws or any other. Cook was found to have intentionally violated the laws, knowing that it would jeopardize his employment. The statute defines misconduct as a *"deliberate"* act or omission, and as conduct evincing *"wanton* or *willful* disregard"* of an employer's interest. Contrary to the decision in *Cook,* once Bruegge was aware of the danger of losing his insurance he committed no willful act or omission. The decision of the district court is reversed.

REVERSED.

OXBERGER, C.J., and HAYDEN, J., concur.

SACKETT and HABHAB, JJ., specially concur.

DONIELSON, J., dissents.

SACKETT, Judge (specially concurring).

I concur specially with the majority's decision to reverse the trial court because I find there is substantial evidence in the record to affirm the agency decision.

HABHAB, J., joins this special concurrence.

DONIELSON, Judge (dissenting).

As the facts in this case are not in dispute, this court may determine as a matter of law whether or not Bruegge's conduct in this case constituted misconduct. *Harlan v. Iowa Dept. of Job Service,* 350 N.W.2d 192, 193 (Iowa 1984). Upon a review of the record and relevant case law, I would conclude Bruegge was discharged for misconduct, and unemployment benefits were appropriately denied in this matter.

Bruegge was discharged for accumulating a driving record which caused his employer's insurance company to determine he was uninsurable. While the final act which precipitated this determination was in fact an accident, this is not decisive in this case. Bruegge was not discharged because of that single accident, but because a *series* of accidents and traffic violations rendered him uninsurable. Insurability was a prerequisite for Bruegge's job. One's status as "insurable" is necessarily derived from an examination of the numerous incidents that comprise a person's driving record. The issue of insurability encompasses several acts which must be examined together. It is this type of aggregate review which sets this case apart from the typical misconduct case in which a single incident is analyzed to determine if it constitutes an intentional and substantial disregard of an employer's interests.

In examining Bruegge's record, it is apparent his convictions for speeding and squealing tires were volitional acts. He cannot, and does not, claim these were not deliberate acts. A review of the *totality* of Bruegge's driving record reveals sufficient willfulness, deliberateness, and culpability to conclude Bruegge's "uninsurable" status amounted to misconduct. To acquire two convictions (speeding and squealing tires) after the commencement of his employment, evinces an intentional and substantial disregard of his employer's interests.

The majority attempts to distinguish *Cook* by arguing there is no evidence Bruegge was guilty of any willful violations of the traffic laws after it was made known to him his driving record was of concern to his employer. The opinion in *Cook* does not reflect that Cook committed any traffic offenses after his employer urged him not to get any more citations, yet the Iowa Supreme Court found his uninsurability constituted misconduct.

Even if Bruegge had not been apprised earlier of the need to remain "insurable," this is a duty he should reasonably have expected to adhere to even without specific notice. A duty not to accumulate traffic tickets, which will impair a driver's insurability, is imposed upon those whose job duties include driving their employer's vehicles. *Byrd v. Review Bd. of Ind. Emp. Sec. Div.,* 469 N.E.2d 463 (Ind.Ct.App. 1984). When driving a vehicle is a regular part of an employee's job, he should be aware, without being specifically informed by his employer, that his continued insurability is a prerequisite to employment.

The only way in which *Cook* is distinguishable from the case at hand is *Cook* involved a series of traffic violations, all of which were apparently volitional. In contrast, the case now before this court involves three volitional acts and two accidents. I would not find this distinction to be persuasive. At issue is whether Bruegge's uninsurable status constitutes misconduct. As long as some of the acts which contributed to Bruegge's uninsurability are deliberate and volitional acts, I would find *Cook* is applicable and Bruegge's conduct in this matter constitutes misconduct.