FOODS, INC., Appellee,

v.

**IOWA CIVIL RIGHTS COMMISSION
and Theresa C. Harkin, Appellants.**

No. 66003.

Supreme Court of Iowa.

April 21, 1982.

Rehearing Denied May 14, 1982.

Thomas J. Miller, Atty. Gen., and Scott H. Nichols, Asst. Atty. Gen., for appellants.

Paul R. Tyler, F. Richard Lyford, and Jon P. Sullivan of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, HARRIS, McGIVERIN, and SCHULTZ, JJ.

SCHULTZ, Justice.

The fighting issue in this case is whether the discharge of a cafeteria worker because of a convulsive epileptic seizure constitutes an unfair employment practice in violation of section 601A.6, The Code. The Iowa Civil Rights Commission determined that the discharge was discriminatory and awarded back pay and ordered reinstatement. On judicial review the district court reversed the Commission. We now reverse the district court and remand for entry of a judgment affirming the Commission's decision.

In January 1976 Theresa Cain Harkin was employed by Foods, Inc., which does business as Dahl's, as a cafeteria worker. Although Harkin stated on her employment application that she had no "physical defects," she had been aware since 1971 that she suffered from epilepsy. She had experienced occasional petit mal seizures and suffered grand mal seizures, during which she lost consciousness, in April 1973 and October 1976. Harkin had received medical treatment for her epilepsy, however, and was taking medication to control the condition when, on March 2, 1977—after fourteen months of satisfactory performance of her employment duties—she suffered a grand mal seizure while on the job. She was discharged by Foods three days later.

Harkin subsequently filed a complaint with the Commission pursuant to section 601A.15, The Code. Following an investigation, a finding of probable cause was made and conciliation was unsuccessfully attempted. A hearing was then held. The hearing officer determined that Foods had committed an unfair employment practice by discriminating against Harkin on the basis of physical disability in violation of section 601A.6(1)(a), The Code. The officer awarded Harkin back pay and ordered Foods to reinstate her. The Commission adopted the hearing officer's decision. On judicial review, the district court disagreed

with most of the Commission's conclusions of law and reversed its decision.

The issues, as stated by the parties in their briefs and during oral argument, are unnecessarily numerous and complex. Although we have thoroughly considered all of the arguments and contentions advanced by the parties, we will discuss only those matters we consider necessary to decide this appeal: (1) whether the hearing officer erred in construing a Commission rule and in determining that there was sufficient evidence in the record that Harkin had a disability; (2) whether the hearing officer erred in determining that Harkin's epilepsy was the reason for her discharge and was unrelated to the nature of her job; (3) whether the hearing officer erred in refusing to dismiss the complaint because of alleged procedural irregularities: (a) whether the Commission's investigation was sufficiently prompt and thorough to meet the requirements of section 601A.15(3)(a), The Code, and (b) whether the Commission violated the nondisclosure requirement of section 601A.15(4), The Code, by engaging in an ex parte communication with an officer of the Epilepsy Foundation of America; and (4) whether the hearing officer erred in computing damages.

■ I. *Scope of review.* The Iowa Administrative Procedure Act (IAPA), ch. 17A, The Code, provides for judicial review of final agency action. § 17A.19, The Code. *See also* § 601A.17(1), The Code ("Judicial review of the actions of the commission may be sought in accordance with the terms of the Iowa administrative procedure Act."). Section 17A.20, The Code, provides:

An aggrieved or adversely affected party to the judicial review proceeding may obtain a review of any final judgment of the district court under this chapter by appeal to the supreme court. The appeal shall be taken as in other civil cases, although the appeal may be taken regardless of the amount involved.

"In 'other civil cases,' this court sits to correct errors of law. Iowa R.App.P. 4. Thus, this court's duty, under the IAPA, is to correct errors of law made by the district

court." *Jackson County Public Hospital v. Public Employment Relations Board*, 280 N.W.2d 426, 429 (Iowa 1979).

The district court, when exercising the power of judicial review conferred by section 17A.19, is itself functioning in an appellate capacity to correct errors of law, as specified in section 17A.19(8).[1] *Id.; Iowa Public Service Co. v. Iowa State Commerce Commission*, 263 N.W.2d 766, 768 (Iowa 1978). "Thus, when this court reviews a decision of a district court rendered pursuant to section 17A.19, the sole question is whether the district court correctly applied the law. In order to make that determination, this court applies the standards of section 17A.19(8) to the agency action to determine whether this court's conclusions are the same as those of the district court." *Jackson County Public Hospital*, 280 N.W.2d at 429–30.

II. *Construction and application of rule 6.1.*

A. *Certification.* Disability is defined in section 601A.2(11):

> "Disability" means the physical or mental condition of a person which constitutes a substantial handicap. In reference to employment, under this chapter, "disability" also means the physical or mental condition of a person which constitutes a substantial handicap, but is unrelated to such person's ability to engage in a particular occupation.

At the time of the hearing, Commission rule 6.1 (then rule 7.1) required that a disability be certified:

> The term "physical and mental disability" shall mean blindness, deafness or any other physical or mental condition which constituted or constitutes a substantial

handicap and which is unrelated to the person's ability to perform jobs or positions which are available to him or her. A substantial handicap shall be certified by the commission through the use of standards and criteria which are established by the state education and services branch of the Iowa department of public instruction and/or a medical examination or through medical records and evidence which have been submitted by a physician, psychiatrist or psychologist.

240 I.A.C. § 6.1 (*rescinded and replaced* May 23, 1979).

At the close of Harkin's evidence, Foods moved to dismiss the complaint on the ground that there was no evidence of a physical "disability," within the meaning of section 601A.2(11) and rule 6.1. Foods maintained that no evidence from the Department of Public Instruction had been presented and that Harkin therefore had to rely on a medical examination or medical records and evidence submitted by a physician, psychiatrist, or psychologist to prove that she had a disability. Foods pointed out that no such admissible evidence had been presented, however, and contended that it had therefore been denied the right to cross-examine testimony concerning Harkin's medical condition.

The hearing officer interpreted Foods' assertions as an objection that there had been no certification of a "substantial handicap" as required by rule 6.1. The hearing officer "concluded that there was no requirement that the substantial handicap be certified by medical records and evidence submitted *at the hearing.*" (Emphasis original). The district court determined that the Commis-

---

1. Section 17A.19(8) provides:

   The court may affirm the agency action or remand to the agency for further proceedings. The court shall reverse, modify, or grant any other appropriate relief from the agency action, equitable or legal and including declaratory relief, if substantial rights of the petitioner have been prejudiced because the agency action is:
   
   a. In violation of constitutional or statutory provisions;
   
   b. In excess of the statutory authority of the agency;

   c. In violation of an agency rule;
   
   d. Made upon unlawful procedure;
   
   e. Affected by other error of law;
   
   f. In a contested case, unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole; or
   
   g. Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

sion's construction was not reasonable or consistent with the IAPA and held that a substantial handicap must be certified by submission of expert medical evidence at the hearing.

In its motion to dismiss at the hearing and in its brief on appeal Foods has confined its assertions to the contention that the evidence presented at the hearing was insufficient to prove that Harkin had a disability. It has not placed in issue the question whether certification need be proved at the hearing; its contentions concern only the type of evidence that must be presented to prove the existence of a disability. We therefore limit our inquiry to the issue preserved for appeal: whether medical evidence of the type specified in rule 6.1 must be presented at the hearing to prove a disability.

■ We conclude that the certification requirements of rule 6.1 pertain to the procedures to be followed by the agency prior to taking action on a complaint, not to the type of evidence that must be presented at the hearing if one should eventuate. The obvious purpose for requiring certification is to ensure that an alleged "disability" constitutes a "substantial handicap" before the Commission takes action on a complaint, which not only conserves agency resources but also guards against unfounded charges of unfair employment practices. The hearing on a complaint occurs only after there has been a determination of probable cause and there have been attempts to eliminate the allegedly discriminatory practice by conference, conciliation, and persuasion. § 601A.15(3)(c), The Code.

The hearing is conducted pursuant to the provisions of the IAPA for contested cases. § 601A.15(7), The Code. The standard of adequacy for evidence in contested case proceedings is defined by the IAPA as follows: "A finding shall be based upon the kind of evidence on which reasonably prudent persons are accustomed to rely for the conduct of their serious affairs, and may be based upon such evidence even if it would be inadmissible in a jury trial." § 17A.14(1), The Code. This provision spec-

ifies the standard for determining the kind of evidence necessary to prove a disability, as defined in section 601A.2(11) and rule 6.1, at the hearing. We now turn to the question whether, under this standard, there is substantial evidence in the record to support the conclusion that Harkin had a disability.

■ B. *Evidence of disability.* Based upon its interpretation of rule 6.1, the district court concluded that the evidence was insufficient to support the hearing officer's determination that Harkin had a physical disability. We disagree.

Although Harkin's personal physician did not testify at the hearing, Harkin gave detailed testimony concerning her epilepsy, physician's care, and medication taken to control the condition. She also testified that Foods' store manager told her she was being discharged because of the seizure she experienced while on duty. Furthermore, two expert witnesses testified generally about the disability of epileptics and their capacity to engage in an occupation. In addition, Harkin's supervisor at Foods testified that the quality and quantity of her work was satisfactory. This evidence is sufficient to support the hearing officer's conclusion that Harkin's epileptic condition constitutes a disability, as defined in section 601A.2(11) and rule 6.1.

■ C. *Literal construction.* The district court concluded that the hearing officer erred by refusing to construe literally the portion of rule 6.1 that defines "physical and mental disability" as "any . . . physical or mental condition which . . . constitutes a substantial handicap *and which is unrelated to the person's ability to perform jobs or positions which are available to him or her.*" (Emphasis added). The hearing officer found that Harkin's physical condition was related in a small way to her ability to do her job. However, the hearing officer determined that a literal construction of rule 6.1 would be inconsistent with Commission rules requiring an employer to make "reasonable accommodation" to the physical or

mental limitations of employees [2] and allowing an employer to discriminate on the basis of disability when a particular physical or mental ability constitutes a "bona fide occupational qualification." [3]

A literal interpretation of rule 6.1 would allow an employer to discharge an employee whenever the employee's disability in any way related to his or her ability to perform the job. Harkin's epilepsy obviously bears some relationship to her ability to perform *any* job, since a convulsive seizure such as the one that led to her firing would render her unconscious, and thus unable to discharge her duties, for a brief period of time. We do not believe such a restrictive interpretation of rule 6.1 is justifiable, however.

Section 601A.18 provides that the Civil Rights Act "shall be construed broadly to effectuate its purposes." Logic requires that this principle of construction also be applied to administrative rules promulgated pursuant to the rule-making authority the Act grants to the Commission. *See* § 601A.5(10), The Code. The construction of rule 6.1 advocated by Foods would effectively defeat the remedial purpose of chapter 601A. We therefore conclude that rule 6.1 must be interpreted to mean that a physical or mental disability constitutes "any ... physical or mental condition which ... constitutes a substantial handicap and which is unrelated to the person's ability to perform [*in a reasonably competent and satisfactory manner*] jobs or positions which are available to him or her." *Cf. Silverstein v. Sisters of Charity of Leavenworth Health Services Corp.*, 614 P.2d 891 (Colo.App.1979) (refusal to employ therapist because of history of epilepsy constitutes discrimination unless hospital can show that disability will prevent performance of duties involved); *Rose v. Hanna Mining*

*Co.*, 94 Wash.2d 307, 616 P.2d 1229 (1980) (summary judgment of no discrimination reversed in action by job applicant alleging discrimination because of epilepsy even though position involved working above molten metal; showing that applicant had done similar work for past seven years presented fact question); *Chicago & N.W. R.R. v. Labor & Industry Review Commission*, 98 Wis.2d 592, 297 N.W.2d 819 (1980) (discharge of employee whose principal duty constituted welding on railroad tracks, but who at times also operated motor vehicles and worked in high places, was unlawfully discriminatory).

The hearing officer recognized that Harkin may suffer future seizures while at work and that it might be necessary for Foods to make reasonable accommodation of Harkin's condition. The hearing officer determined that Foods had not attempted accommodation, however, and that accommodation would not have imposed undue hardship on Foods. This determination is supported by substantial evidence in the record.

III. *Discharge.*

A. *Reason for discharge.* The hearing officer determined that Harkin was discharged because she suffered a seizure on the job. Conversely, the district court found that Harkin was discharged because she failed to disclose her epileptic condition on her application for employment. We conclude that the district court erred in making this determination.

As just noted, Harkin testified that the store manager advised her "he would have to let [her] go" because of the seizure. Harkin also stated that her supervisor at Foods assured her that her discharge was not related to her job performance. Addi-

---

**2.** Rule 6.2(6) provides in part:

    An employer shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its program.

240 I.A.C. § 6.2(6).

**3.** Rule 6.7 provides in part:

    It shall be lawful for an employer ... to take any action otherwise prohibited under these rules where mental or physical ability is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business.

240 I.A.C. § 6.7(1).

tionally, Harkin's supervisor testified that the quality and quantity of her work was satisfactory. This testimony constitutes substantial evidence to support the hearing officer's determination. The only evidence that Harkin was discharged because she misrepresented her physical condition on her application for employment was testimony of the Commission staff member who investigated Harkin's complaint. The investigator testified that Foods' attorney had stated that the reason for Harkin's termination "was because of harm to herself and because she misrepresented herself on the application." This testimony was not sufficient to allow the district court to conclude that the hearing officer's determination was not supported by substantial evidence.

■ B. *Nature of the employment.* The hearing officer determined that Harkin's discharge was not "based upon the nature of the occupation," as that phrase is used in section 601A.6(1)(a), The Code. The hearing officer found that during the fourteen months Harkin was employed by Foods as a cafeteria worker for Dahl's:

Most of her time was spent washing dishes, bussing dishes off tables, and taking clean dishes to a service area. She occasionally served food from behind a steam table and she occasionally operated a cash register and took payment for food. On rare occasions she worked at a grill for short periods....

. . . .

Even though each employee was expected to be able to perform each task, employees usually specialized in one or more tasks and spent most of their time doing those specialized tasks.

Some of the tasks in the cafeteria did not subject the employee to a high risk of injury.

The tasks of clearing dishes, washing dishes, carrying dishes, operating the steam table, and operating the cash register fell into this category.

Some of the tasks subjected the employees to a higher risk of injury. Operating the grill, slicing meat or cheese, and operating the deep fat fryer fell into this category.

Dahl's could have retained Harkin as an employee doing, for the most part, less dangerous tasks, but also occasionally doing the more dangerous tasks, with little or no detriment to the efficient operation of the cafeteria.

Such was the situation before Harkin suffered the seizure on the job, and Dahl's had been well satisfied with her job performance.

The district court, however, found that her discharge was, in fact, based upon the nature of her occupation and therefore was not an unfair employment practice.

This court has stated that the "unless based upon the nature of the occupation" language of section 601A.6 is "akin to the 'bona fide occupational qualification' exception present in the federal fair employment legislation." *Cedar Rapids Community School District v. Parr*, 227 N.W.2d 486, 492 (Iowa 1975); *see also Iowa Department of Social Services v. Iowa Merit Employment Department*, 261 N.W.2d 161, 166 (Iowa 1977). The district court concluded that Foods sustained its burden of demonstrating that its discrimination was justified by a bona fide occupational qualification (BFOQ). The court stated that Harkin's "tendency" to suffer epileptic seizures, "coupled with the potentially hazardous nature of the cafeteria machinery she worked near such as grills, fryers, slicers, and toasters, posed substantial danger to Theresa Harkin, her fellow workers, and ... customers." The court concluded that "[m]ost of the Hearing Officer's erroneous findings of fact in this area of the case relates to the refusal to acknowledge that work duties which may not be hazardous for a healthy employee may very well be highly dangerous for an employee who irregularly suffers dizzy spells."

Again we are confronted with conflicting viewpoints as to what inferences and conclusions should be drawn from the evidence in the record. As set out in division I, however, the district court's review was not de novo. It could overturn the hearing

officer's determination only if it was not supported by substantial evidence in the record.

We conclude that there is substantial evidence to support the hearing officer's determination. The evidence reveals that Harkin had worked as a waitress for several employers prior to being employed by Foods and had been able to perform her duties for Foods capably. Under rule 6.2(6) Foods was required to attempt reasonable accommodation of Harkin's handicap. The testimony of two of Harkin's coemployees reveals that Harkin's primary responsibilities were cleaning off tables, washing dishes, and putting them away, and that she occasionally worked on the serving line and operated the cash register. The coemployees testified that all employees were expected to operate all cafeteria equipment when necessary, but that Harkin seldom operated the equipment the district court found to be potentially hazardous. Harkin's supervisor admitted that it would have been possible to assign Harkin only the responsibilities of clearing and washing dishes, operating the cash register, and working on the service line. She stated that it would have been inconvenient, however, because no one had special job duties; all employees had the duty to do whatever needed to be done. This sufficiently supports the hearing officer's conclusion that Foods could have accommodated Harkin's condition.

The record does support the inference that Harkin might occasionally suffer an epileptic seizure during the course of her employment. But the evidence does not warrant the conclusion as a matter of law that such a seizure would present a risk of danger to Harkin or other persons, especially if Foods reasonably accommodates her condition, as it is required to do. Accordingly, we hold that there is substantial evidence in the record to support the hearing officer's determination that Harkin's discharge was not based upon the nature of her occupation.

IV. *Alleged procedural errors.* The district court concluded that the hearing officer erred in deciding two issues that do not go to the merits of the case. The court determined that the Commission violated: (1) its duty under section 601A.15(3)(a), The Code, to make a prompt and thorough investigation of the complaint, and (2) its duty of confidentiality under section 601A.15(4), The Code.

A. *Investigation.* The Commission has a duty to make a prompt investigation of a complaint. Section 601A.15(3)(a), The Code, provides that "[a]n authorized member of the commission staff shall make a prompt investigation" after a complaint has been filed. In 1978 the legislature amended the Civil Rights Act by adding the following paragraph to section 601A.16: "It is the legislative intent of this chapter that every complaint be at least preliminarily screened during the first one hundred twenty days." 1978 Session, 67th G.A., ch. 1179 § 1, *codified* at § 601A.16(6), The Code (effective January 1, 1979). Although the provision is not applicable to the instant case because of its effective date, it does provide an indication of the legislative intent underlying the "prompt investigation" requirement of section 601A.15(3)(a).

In this case we need not determine whether failure to conduct a prompt or thorough investigation are grounds to dismiss a complaint, however. These matters were not raised until the case was submitted for decision at the hearing. The objection was therefore untimely.

The principal purpose for requiring an investigation is to determine whether there is probable cause to believe that an unfair or discriminatory employment practice has occurred. *See* § 601A.15(3)(a), The Code. A probable cause determination is a prerequisite to the initiation of efforts to eliminate the unfair or discriminatory practice. *See* § 601A.15(3)(b), The Code. Once it has been proved by competent evidence at an adversary hearing that the practice was in fact committed, it would be illogical to overturn the result of the hearing on the ground that the evidence gathered in the investigation was insufficient to base a finding of probable cause on. The respon-

dent's complaint, if any, must go to the sufficiency of the evidence produced at the hearing.

We in no way condone unreasonably dilatory investigations. However, objection on this ground must be made before a case has proceeded through a full-blown evidentiary hearing. In any event, Foods has not shown that its substantial rights were prejudiced by the Commission's alleged delay in investigating Harkin's complaint.

■ B. *Ex parte communication.* Section 601A.15(4), The Code, provides:

> The members of the commission and its staff shall not disclose the filing of a complaint, the information gathered during the investigation, or the endeavors to eliminate such discriminatory or unfair practice by conference, conciliation, and persuasion, unless such disclosure is made in connection with the conduct of such investigation.

Subsequent to the determination of probable cause and during the period of time when Harkin's case was in the conciliation stage, a Commission staff member received a telephone call from an officer of the Epilepsy Foundation of America. According to the staff member's testimony at the hearing, which was based on a memorandum of the conversation, the officer stated he had been informed of Harkin's complaint by a member of the Foundation's board of directors and had contacted Harkin, who had given verbal permission for the Foundation to assist in the settlement of the complaint. The facts of the case were not discussed during the conversation. However, the Foundation did offer to provide "pressure" in getting the matter settled.

The hearing officer determined that the communication violated section 601A.15(4). However, he concluded that the provision is merely directory, rather than mandatory, and refused to dismiss the complaint because Foods had not shown prejudice. The district court held that the violation of the duty of confidentiality prejudiced Foods' substantial rights and constituted reversible error.

Since the staff member did not disclose the filing of the complaint, and since there is no evidence that she disclosed any of the details of the case, it is questionable whether the communication violated section 601A.15(4). We need not determine that issue, however, because even if it did, we believe the hearing officer correctly determined that the provision is directory and Foods did not show that it was prejudiced. In *Taylor v. Department of Transportation*, 260 N.W.2d 521, 522–23 (Iowa 1977), this court stated:

> Mandatory and directory statutes each impose duties. The difference between them lies in the consequence for failure to perform the duty. Whether the statute is mandatory or directory depends upon legislative intent. When statutes do not resolve the issue expressly, statutory construction is necessary. If the prescribed duty is essential to the main objective of the statute, the statute ordinarily is mandatory and a violation will invalidate subsequent proceedings under it. If the duty is not essential to accomplishing the principal purpose of the statute but is designed to assure order and promptness in the proceeding, the statute ordinarily is directory and a violation will not invalidate subsequent proceedings unless prejudice is shown.

The principal purpose or objective of chapter 601A is "to eliminate unfair and discriminatory practices in public accommodations [and] employment." 1965 Session, 61st G.A., ch. 121. The purpose of section 601A.15(4)—to keep confidential, matters surrounding the allegations of a complaint that have not been proved in an adversary hearing—is subsidiary and incidental to the larger, remedial purpose of the Iowa Civil Rights Act. The duty of confidentiality is not essential to the main objective of the statute. And in the absence of prejudice it would be fundamentally unfair to deny Harkin the protection of the Act. Since Foods has not shown that it was prejudiced by the communication, we hold that the district court erred in finding that the communication prejudiced Foods' substantial rights.

V. *Damages.* Foods contends that the hearing officer erred in computing the damages awarded to Harkin in three respects.

■ A. *Farm income.* Harkin owns and manages a farm, deriving income from renting the cropland and from a cattle operation run by her and her children. Foods contends that there is substantial evidence that Harkin's farm income increased subsequent to her discharge because she was raising more cattle and that the hearing officer erred by ignoring such funds in computing damages. We disagree.

The record shows that Harkin began the cattle operation when her husband died, more than fourteen years ago. Harkin testified that she had run the operation while working for other employers and that although the number of cattle fluctuated slightly, it was not causally related to her employment with Foods. There is no evidence contradicting this testimony.

Thus, it appears from the record that Harkin's farm income would have been the same regardless of her discharge by Foods. The hearing officer therefore did not err by failing to reduce the damages by Harkin's increase in farm income subsequent to her discharge.

■ B. *Wages lost because of appeal.* The hearing officer ordered Foods to reinstate Harkin in her former position or a comparable one within thirty days after the decision became final at the same rate she would have been paid had she not been discharged and had received normal raises. The hearing officer further provided that if Harkin were not reinstated within thirty days, because of appeal or for another reason, Foods was required to pay Harkin as if she had been reinstated thirty days after the decision became final.

Foods contends that to award wages lost because of appeal is contrary to the general rule that in actions at law damages should be assessed as of the date the action is commenced and in actions in equity as of the date of trial or the date the final decree is entered. This general rule has been recognized as being too general to accurately depict the case authority on the law of damages, however. *See* 22 Am.Jur.2d *Damages* § 19 (1965).

Section 601A.14(12), The Code 1977, *current version at* § 601A.15(8), The Code, applicable at the time this action was commenced, provided:

> If, upon taking into consideration all the evidence at a hearing, the commission shall find that a respondent has engaged in . . . any discriminatory or unfair practice . . ., the commission shall . . . issue and cause to be served upon such respondent an order requiring such respondent to cease and desist from such discriminatory or unfair practice and to take such affirmative action, *including, but not limited to,* . . . reinstatement, or upgrading of employees, with or without back pay, *. . . as in the judgment of the commission shall effectuate the purposes of this chapter.*

(Emphasis added). This provision invests the Commission with considerable discretion in fashioning an appropriate remedy.

The ultimate purpose in awarding damages as compensation for injury is to place the injured party in the position he or she would have been in had there been no injury. *Dealers Hobby, Inc. v. Marie Ann Linn Realty Co.,* 255 N.W.2d 131, 134 (Iowa 1977). Harkin would not have incurred a loss of wages in this case but for her wrongful discharge by Foods. She therefore should not bear the economic consequences of her discharge. The hearing officer's provision for loss of earnings helps place Harkin in the position she would have been in had she not been wrongfully discharged, and it promotes the remedial purpose of the Civil Rights Act. We find no abuse of discretion on the part of the hearing officer; therefore, we find no error.

■ C. *Unemployment compensation.* Foods contends that the hearing officer erred because he did not reduce Harkin's damage award by the amount of unemployment compensation she received subsequent to her discharge.

There is a conflict of authority as to whether an award of back pay should be reduced by unemployment compensation received by the claimant. *Compare Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 721 (7th Cir. 1969) (deduction of unemployment compensation is proper as valid exercise of trial judge's discretion to "order such affirmative action as may be appropriate" under 42 U.S.C. § 2000e–5(g)); *Bradford v. Sloan Paper Co.*, 383 F.Supp. 1157, 1163–64 (N.D.Ala.1974) (unemployment compensation deducted without discussion); *and Diaz v. Pan American World Airways, Inc.*, 346 F.Supp. 1301, 1309, *modified on other grounds*, 348 F.Supp. 1083 (S.D.Fla.1972) (same); *with Tidwell v. American Oil Co.*, 332 F.Supp. 424, 437–38 (D.Utah 1971) (unemployment compensation is collateral in nature and need not reduce back pay); *Mabin v. Lear Siegler, Inc.*, 4 E.P.D. ¶ 7768 (W.D.Mich.1971), *aff'd*, 457 F.2d 806 (6th Cir. 1972) (same); *and Abron v. Black and Decker Manufacturing Co.*, 439 F.Supp. 1095, 1115 (D.Md.1977), *aff'd in part and vacated in part on other grounds*, 654 F.2d 951 (4th Cir. 1981) ("monies . . . received as . . . unemployment compensation 'are made to carry out an independent social policy' and are not deductible from a back pay award"). *See also Pedreyra v. Cornell Prescription Pharmacies, Inc.*, 465 F.Supp. 936, 951 (D.Colo.1979) (unemployment compensation does not offset back pay when state law requires employee who received back pay to repay unemployment benefits to state).

As already noted, the purpose of compensatory damages is to place the injured party in the position he or she would have been in but for the injury. If unemployment compensation is not deducted from a damage award, the injured party is placed in a better position than if there had been no injury. Since unemployment compensation is funded by employer contributions, we do not believe benefits are truly collateral. We therefore hold that the hearing officer erred in failing to reduce Harkin's damage award by the amount of unemployment compensation she received. This holding is consistent with an amendment to section 601A.15, which was effective January 1, 1979, and consequently not applicable to this case. That provision provides: "Interim earned income and unemployment compensation shall operate to reduce the pay otherwise allowable." 1978 Session, 67th G.A., ch. 1179, § 16, *codified at* § 601A.15(8)(a)(1), The Code.

VI. *Conclusion.* We have thoroughly considered all of the contentions raised by the parties, whether or not expressly addressed in this opinion. We conclude that the district court erred in reversing the Commission's decision. Accordingly, we reverse the judgment of the district court and remand for entry of a new judgment consistent with this opinion.

REVERSED AND REMANDED.