**PEOPLES MEMORIAL HOSPITAL,**
Appellee,

v.

**The IOWA CIVIL RIGHTS COMMISSION, Appellant.**

No. 66446.

Supreme Court of Iowa.

July 21, 1982.

Thomas J. Miller, Atty. Gen., Victoria L. Herring, Asst. Atty. Gen., and Jon Fister, Waterloo, for appellant.

James R. Snyder, Iris E. Muchmore, and Ann E. Brenden of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellee.

McGIVERIN, Justice.

The district court reversed an order of respondent Iowa Civil Rights Commission (Commission) which found petitioner Peoples Memorial Hospital (PMH) guilty of sex discrimination. In our view of the case a single issue is dispositive: Whether there is substantial evidence in the record before the Commission to support its finding of sex discrimination. We find that there is not and therefore affirm the district court order.

The findings of fact made by the Commission's hearing officer indicates the following chain of events. PMH, located in Independence, employed Sharon Thomas Fenner in October 1970 as a nurse-anesthetist. She was employed on an "on call" basis, having no regular hours of employment, but being required to report to work whenever her services were required. Fenner was hired under an oral agreement paying her $15,000 annually plus 50% of any anesthesia fees collected over that base amount. In 1971, her first full year of employment for PMH, she earned $15,-017.60.[1] In 1972, Fenner received a base salary of $15,000 plus 35% of anesthesia fees over that amount for a wage total of $16,-677.20. Because there had been a disagreement as to the term of Fenner's oral employment agreement in 1972, she entered into written employment contracts for the 1973 through 1975 fiscal years.

For 1973, Fenner received a $15,000 base plus 35% of excess anesthesia fees for $19,-261.25 compensation. In 1974, the same contract applied and she earned $20,209.97. In 1975, her base pay was raised to $16,500 and she received 35% of the excess anesthesia fees for a total of $23,629.30 in wages earned.

During the fall of 1975 PMH and Fenner entered into their annual negotiations to reach the terms of her employment contract in 1976. In September 1975, William Yingling had been appointed administrator of

1. Employment agreements at PMH ran from December 1 until November 30. From 1971 until 1975, it was the practice of PMH to review the salaries of its employees in the fall of the year with new compensation plans taking effect on December 1.

PMH. He proposed a $1,000 raise for all department heads, which would have applied to Fenner. In late September Fenner made a verbal wage proposal to PMH of $20,000 base plus 35% of anesthesia fees collected in excess of the base.

Yingling made a written wage proposal to Fenner in early October. The proposed contract extended the across-the-board pay raise to Fenner, in other words a base salary of $17,500 plus 35% of excess anesthesia fees.[2] Fenner made a written counteroffer on October 14 proposing a $19,000 base plus 33% of excess anesthesia fees.[3] She also proposed that if the base was less than $19,000 the percentage compensation would be raised to 35% of excess anesthesia fees.

On November 11, 1975, the PMH board of trustees rejected Fenner's counteroffer. The board then changed policy relative to employment agreements. Yingling was instructed by the board to continue contract negotiations with Fenner under three guidelines: 1) no written contract; 2) no percentage of anesthesia fees collected over the base salary; and 3) total salary not to exceed $19,000. Two reasons were given for the seemingly abrupt change in bargaining position. Numerous complaints had been received by the board from the public and other PMH employees that Fenner was receiving preferential treatment in that she was the only PMH employee with a written employment contract and also the only employee who received a percentage of patient fees as wages. On November 17, Yingling thus made a proposal to Fenner of a salary not to exceed $19,000 with no written contract or percentage of excess anesthesia fees.

The 1975 fiscal year ended November 30, 1975. Fenner continued to work at PMH, albeit not under written contract. On December 10 Yingling set out the position of the board to Fenner in a letter. He ex-

pressed the concern of PMH to settle the contract dispute expeditiously so that the hospital could be certain of her employment intentions and be certain that it would have the personnel required for surgery. The letter listed PMH's "expectations if you are to remain as an employee." The expectations were: 1) $19,000 base salary; 2) no percentage of anesthesia fees; 3) status as department head, meaning entitlement to department head benefits and assumption of department head responsibilities; 4) minimum of 25 hours of work per week, with assistance to nursing staff required if nurse-anesthetist duties did not comprise the minimum; 5) opportunity to attend continuing education meetings at PMH expense; 6) availability for emergency call two out of three weekends and during non-working hours on weekdays; and 7) responsibility of arranging for fill-in personnel when not available for call and notification of medical staff of replacements.

Fenner then made a counter proposal, essentially reiterating her October counteroffer, calling for a written contract with a base salary of $19,000 plus 33% of anesthesia fees over base. She expressed her willingness to continue negotiations, but was not receptive to an arrangement not including a percentage of fees or a total salary offer less than her 1975 wages of $23,629.30. The PMH board of trustees refused to accept the Fenner counter proposal and expressed to her that the terms of employment set out in the December 10 letter were the final offer. On December 19 Fenner rejected the final offer of PMH and informed the hospital she would resign her employment on December 24. She did, in fact, resign on December 24.

Fenner's resignation left a void on the staff at PMH that needed to be filled rapidly. Yingling did not believe that a nurse-anesthetist acting on an independent contract basis would be sufficient to meet the

---

**2.** The proposal also differed from the prior contract in regard to liability malpractice insurance and advance notice for absences.

**3.** Under the Yingling proposal, depending on the amount of anesthesia fees received which were reasonably estimated to be between $37,-

000 and $50,000, Fenner would have received from $24,325 to $28,875 for 1976 whereas under her own proposal she would earn between $24,940 and $29,230. Thus, there was a difference of only $355 to $615 in the proposals.

long-term needs of PMH. He therefore began a search to acquire a nurse-anesthetist as a PMH employee as soon as possible. The search located a nurse-anesthetist in Quincy, Illinois, who was interested in the position. Yingling interviewed this candidate, John Peters, and made him an employment offer of $19,000 salary with no written contract or percentage of fees. Peters counteroffered for $22,000 with no written contract or percentage of fees. The PMH board of trustees accepted Peters' counteroffer. His employment, like the final offer to Fenner, required him to perform some duties outside of nurse-anesthesiology.

Fenner learned about Peters' employment on January 12, 1976. She filed a complaint with the Commission on April 19, 1976, alleging that she had been subjected to differential treatment regarding her working conditions solely because of her sex and that PMH was therefore in violation of section 601A.6, The Code.[4] Although Fenner returned to work at PMH in December 1977 as a "self-employed or free-lance anesthetist," the Commission's administrative process continued. A public hearing was held on the matter on August 9, 1978. On July 13, 1979, a recommended decision and order of the hearing officer was filed.

The Commission's hearing officer found that Fenner had "carried her burden of showing actions from which unlawful discrimination can be inferred." The hearing officer further found, however, that PMH had articulated "legitimate, non-discriminatory business reasons" for its actions and since Fenner had not shown such reasons were a pretext for discrimination there was no unfair or discriminatory practice prohibited under chapter 601A. Under the recommended decision by the hearing officer, Fenner's petition would be ordered dismissed.

At its August 9, 1979, meeting the Commission reviewed and reversed the July 13

recommended decision and order. The Commission found that PMH had committed unfair and discriminatory acts in violation of section 601A.6. It remanded the case to the hearing officer for determination of damages and an appropriate supporting decision and order. The Commission revised its order on August 23, specifically finding that PMH had "failed to establish a non-discriminatory business reason to overcome [Fenner's] prima facie case."

On November 29, 1979, the Commission issued a decision and order finding that PMH had violated chapter 601A. It ordered PMH to pay Fenner $16,575.00 as damages pursuant to section 601A.14(12), The Code 1975.

PMH filed a petition for judicial review of the Commission's decision and order. The district court, finding no reasonable evidentiary support for the Commission's determination, reversed the November 29 order. § 17A.19(8)(f), The Code. The Commission appealed.

As a preliminary matter we note that PMH has challenged the Commission's jurisdiction to enter the November 29 order because the Commission met to review the hearing officer's recommendation on August 9 instead of August 16, 1979. We find that the Commission had jurisdiction to enter the order.

We have recently discussed our scope of review for appeals from district court judicial review of agency action pursuant to section 17A.19 in *Foods, Inc. v. Iowa Civil Rights Commission*, 318 N.W.2d 162, 164–65 (Iowa 1982), and *City of Mason City v. PERB*, 316 N.W.2d 851, 853 (Iowa 1982). The following principles from *Foods* are equally applicable to the present case:

> The Iowa Administrative Procedure Act (IAPA), ch. 17A, The Code, provides for judicial review of final agency action. § 17A.19, The Code. *See also* § 601A.17(1), The Code ("Judicial review of the actions of the commission may be

---

4. Section 601A.6(1)(a) provides in relevant part: "1. It shall be an unfair or discriminatory practice for any: a. Person to . . . discriminate in employment against . . . any employee

because of the . . . sex . . . of such . . . employee, unless based upon the nature of the occupation."

sought in accordance with the terms of the Iowa administrative procedure Act."). Section 17A.20, The Code, provides:

> An aggrieved or adversely affected party to the judicial review proceeding may obtain a review of any final judgment of the district court under this chapter by appeal to the supreme court. The appeal shall be taken as in other civil cases, although the appeal may be taken regardless of the amount involved.

"In 'other civil cases,' this court sits to correct errors of law. Iowa R.App.P. 4. Thus, this court's duty, under the IAPA, is to correct errors of law made by the district court." *Jackson County Public Hospital v. Public Employment Relations Board,* 280 N.W.2d 426, 429 (Iowa 1979).

The district court, when exercising the power of judicial review conferred by section 17A.19, is itself functioning in an appellate capacity to correct errors of law, as specified in section 17A.19(8). *Id.; Iowa Public Service Co. v. Iowa State Commerce Commission,* 263 N.W.2d 766, 768 (Iowa 1978). "Thus, when this court reviews a decision of a district court rendered pursuant to section 17A.19, the sole question is whether the district court correctly applied the law. In order to make that determination, this court applies the standards of section 17A.19(8) to the agency action to determine whether this court's conclusions are the same as those of the district court." *Jackson County Public Hospital,* 280 N.W.2d at 429–30. 318 N.W.2d at 164–65 (footnote omitted).

In the present case section 17A.19(8)(f) is primarily at issue. It provides:

> 8. The court may affirm the agency action or remand to the agency for further proceedings. The court shall reverse, modify, or grant any other appropriate relief from the agency action, equitable or legal and including declaratory relief, if substantial rights of the petitioner have been prejudiced because the agency action is:

> \* \* \* \* \* \*

f. In a contested case, unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole.

■ Section 17A.19(8)(f) is the "substantial evidence" rule in review of agency action. *Anstey v. Iowa State Commerce Commission,* 292 N.W.2d 380, 383 (Iowa 1980); *Briggs v. Board of Directors,* 282 N.W.2d 740, 743 (Iowa 1979). Evidence is substantial if a reasonable person would find it adequate for reaching a decision. *Briggs,* 282 N.W.2d at 743; *Davenport Community School District v. Iowa Civil Rights Commission,* 277 N.W.2d 907, 910 (Iowa 1979); *Woods v. Iowa Dept. of Job Service,* 315 N.W.2d 838, 841 (Iowa Ct.App. 1981). In making this determination, we are limited to the record made before the hearing officer, § 17A.19(7), including "[a]ny decision, opinion or report by the [hearing] officer," § 17A.12(6)(f). *See Woods,* 315 N.W.2d at 841.

■ "The mere possibility that the record would support another conclusion does not permit the district court or this court to make a finding inconsistent with the agency findings so long as there is substantial evidence to support it." *Woods,* 315 N.W.2d at 841. While the substantiality of evidence must take into account whatever in the record fairly detracts from its weight, *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456, 467 (1951); *Briggs,* 282 N.W.2d at 743, the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. *Briggs, id.; City of Davenport v. PERB,* 264 N.W.2d 307, 311 (Iowa 1978); *Reisner v. Board of Trustees of Fire Retirement System,* 203 N.W.2d 812, 814 (Iowa 1973). The question is not whether there is sufficient evidence to warrant a decision the agency did not make, but rather whether there is substantial evidence to warrant the decision it did make. *Woods,* 315 N.W.2d at 841; *see Deaver v. Armstrong Rubber Co.,* 170 N.W.2d 455, 464 (Iowa 1969).

We take notice of other principles in this appeal. We pay respect to the expertise of administrative tribunals like the Commission "resulting in a reasonable range of informed discretion." *Davenport Community School District*, 277 N.W.2d at 910; *City of Davenport*, 264 N.W.2d at 312–13. It is the agency decision, not that of the hearing officer, that is subject to our review, §§ 17A.19; 601A.17(1), although the decision of the hearing officer is part of the record on review, § 17A.12(6)(f), and deference is due to hearing officer decisions concerning issues of credibility of witnesses, *Bangor and Aroostook Railroad Co. v. ICC*, 574 F.2d 1096, 1110 (1st Cir.), *cert. denied*, 439 U.S. 837, 99 S.Ct. 121, 58 L.Ed.2d 133 (1978).

And finally, we recognize that chapter 601A is to be construed broadly to effectuate its purposes. § 601A.18, The Code; *see Iron Workers Local No. 67 v. Hart*, 191 N.W.2d 758, 770 (Iowa 1971). *See generally Iowa State Fairgrounds Security v. Iowa Civil Rights Commission*, 322 N.W.2d 293, —— (Iowa 1982).

■ Applying these principles, we are convinced that the record when viewed as a whole did not substantiate the Commission's decision finding PMH had violated section 601A.6 by discriminating against Fenner on the basis of sex. The record discloses that the treatment Fenner received from PMH was fair and had no connection with her sex. She was offered the same general employment terms as all other employees. She rejected all of PMH's offers, the first of which was for substantially more than Peters accepted. She later rejected a flat salary without a percentage of fees, as well as any offer of less than she received in 1975 ($23,629.30). She then resigned. To obtain a replacement, PMH had to pay a larger flat salary to Peters, but he accepted employment without a contract or percentage of fees, and accepted hospital duties in addition to those of nurse-anesthetist. The fact Peters was a male was irrelevant to his replacing Fenner as a PMH employee. The statistical employment evidence also shows that PMH has been fair to women as a class and Fenner as an individual.

Assuming a prima facie showing of sex discrimination could be found to exist from the record, PMH could not be found to have violated section 601A.6. There is no support in the record for the Commission's conclusion that PMH had not established a "non-discriminatory business reason to overcome [Fenner's] prima facie case" of sex discrimination.[5] First, the final offer

---

**5.** It is possible the Commission should have been reversed on the basis of section 17A.19(8)(e) ("affected by other error of law") as well as the substantial evidence rule of section 17A.19(8)(f). This stems from the Commission's apparent misunderstanding of *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed. 207 (1981), and *Linn Co-op. Oil Co. v. Quigley*, 305 N.W.2d 729 (Iowa 1981).

In *Quigley*, the hearing officer found that the complainant had made a prima facie showing of sexual discrimination. 305 N.W.2d at 732–33. The officer then required the employer, to overcome the prima facie case, to show "either that sex was a bona fide occupational qualification, that the termination was a business necessity or that Complainant . . . was terminated pursuant to a rational and neutral business policy applied to all employees." *Id.* at 733.

We found that the hearing officer "whose findings and order the . . . Commission adopted" improperly imposed the burden of proof on the employer. *Id.* at 732. We said: "We have found no rule that thus shifts the burden of proof to the employer. Everyone is presumed to have discharged his or her duty, whether legal or moral, until the contrary is made to appear. In these cases, complainant has the burden of proof, not the respondent. The burden of persuasion never shifts." *Id.* at 733 (citations omitted).

We then discussed *Burdine*, clearly showing that it did not authorize shifting the burden of proof: "[A] prima facie case is rebutted when the employer merely produces 'admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had *not been* motivated by discriminatory animus.'" *Id.* (quoting *Burdine*, 450 U.S. at 257, 101 S.Ct. at 1096, 67 L.Ed.2d at 218) (emphasis supplied).

We continued: "The defendant need not persuade the court that it was actually motivated by the proffered reasons." 305 N.W.2d at 733 (quoting *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094, 67 L.Ed.2d at 216).

We finished: "The plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proffered

she received was on a par with those her co-workers received. Second, after Fenner quit her employment on December 24, 1979,[6] PMH was understandably required to employ another nurse-anesthetist to ensure continued surgery in the hospital. The fact that the hospital had to offer a $22,000 flat salary without a percentage of fees to get a nurse-anesthetist to relocate from Illinois to Independence is a legitimate non-discriminatory business reason, especially in light of the fact that Fenner had indicated she would not accept less than her 1975 salary of $23,629.30.

It is clear there is no substantial evidence to support the Commission's finding that PMH violated section 601A.6.[7] In our view there has been no differential treatment and no actual consideration of Fenner's or Peters' sex by PMH in this matter. We conclude that district court correctly applied the law. *Foods*, 318 N.W.2d at 165; *City of Mason City*, 316 N.W.2d at 853. Our "conclusions are the same as those of the district court." *Foods, id.; City of Mason City, id.* Therefore, the district court order reversing the Commission's finding of sex discrimination in violation of section 601A.6 is affirmed.

AFFIRMED.

---

reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." 305 N.W.2d at 733 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217).

The Commission's error of law pursuant to section 17A.19(8)(e) in the present case was its apparent use of a burden of persuasion shift, after it found a prima facie case had been shown, contrary to *Burdine* and *Quigley*. The use of this burden shift is suggested by the following language in the August 23, 1979, order: "The Respondent failed to establish a nondiscriminatory business reason to overcome Complainant's prima facie case," and similar language in the November 29, 1979, decision and order: "The Respondent having failed to rebut the prima facie case, the prima facie showing of sex discrimination rises to the level of an ultimate conclusion of law" and "Respon-

dent failed to establish a non-discriminatory business reason for the actions it took ... in hiring a nurse-anesthetist."

The language used by the Commission strongly suggests it adopted a burden of persuasion shift after it found a prima facie showing of sex discrimination. If this in fact occurred, reversal would be proper under section 17A.19(8)(e). We need not and do not, however, decide this issue in the present case and have discussed it solely as a guide to the bench, bar and the Commission.

6. The parties do not suggest that it would have been illegal for PMH to discharge Fenner for virtually any reason, including bargaining intransigence, but excluding sex, in the absence of a collective bargaining agreement. *See Harper v. Cedar Rapids Television Co.*, 244 N.W.2d 782, 791 (Iowa 1976); *Allen v. Highway Equipment Co.*, 239 N.W.2d 135, 139 (Iowa 1976).

7. We find it unnecessary to address PMH's contentions that the Commission acted in an arbitrary and capricious manner. § 17A.19(8)(g), The Code.