IOWA BEER AND LIQUOR CONTROL
DEPARTMENT STORE 1023, and Iowa
State Executive Council, Petitioners-Appellees,

v.

IOWA CIVIL RIGHTS COMMISSION,
Respondent-Appellant,

and

Leona Brown, Intervenor.

No. 2–68272.

Court of Appeals of Iowa.

June 28, 1983.

Thomas J. Miller, Atty. Gen., and Scott H. Nichols, Asst. Atty. Gen., for respondent-appellant.

Alan N. Waples of Wittkamp & Waples, Burlington, for intervenor.

Patricia A. Shoff and Steven L. Nelson of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for petitioners-appellees.

Heard by OXBERGER, C.J., and DONIELSON, SNELL, and SCHLEGEL, JJ.

SNELL, Judge.

Claimant, Leona Brown, was hired as a liquor store clerk and worked for approximately eight months notwithstanding the fact that a physical disability (heart condition) prevented her from lifting more than ten pounds. Claimant performed such tasks as operation of the cash register, bookkeeping, dusting, checking in of orders, and light lifting. The written policies of the petitioner-employer, Iowa Beer and Liquor Control Department, require all liquor store clerks to be able to perform every task enumerated in the job description, of which some involve lifting moderately heavy objects. On forms filed with the employer claimant stated that she had no physical disability, but she testified at trial that she did not conceal her condition from the various store managers for whom she worked. She was fired after her condition was discovered by higher levels of management. She then filed a complaint with the Iowa Civil Rights Commission alleging that her termination resulted from disability discrimination. The Commission found in claimant's favor, ordered claimant reinstated in her job, and awarded backpay of $18,076.20. On judicial review, the district

court reversed, determining that the ability to lift more than ten pounds was a bona fide occupational qualification and that the employer had not failed to reasonably accommodate claimant's handicap.

Respondent Iowa Civil Rights Commission appeals from the district court decision which vacated the Commission's order and dismissed the complaint. We reverse and remand.

Section 601A.17(1) of the Iowa Civil Rights Act of 1965 and Chapter 17A of the Iowa Administrative Procedure Act provide for judicial review of final agency action. See Iowa Code section 17A.19 (1983). The district court, when exercising the power of judicial review conferred by section 17A.19, functions in an appellate capacity to correct errors of law as specified in section 17A.19(8). *Iowa Public Service Co. v. Iowa State Commerce Commission,* 263 N.W.2d 766, 768 (Iowa 1978). "Thus, when this court reviews a decision of a district court rendered pursuant to section 17A.19, the sole question is whether the court correctly applied the law. In order to make that determination, this court applies the standards of section 17A.19(8) to the agency action to determine whether this court's conclusions are the same as those of the district court." *Jackson County Public Hospital v. Public Employment Relations Board,* 280 N.W.2d 426, 429–30 (Iowa 1979).

Section 17A.19(8) provides:

The court may affirm the agency action or remand to the agency for further proceedings. The court shall reverse, modify, or grant any other appropriate relief from the agency action, equitable or legal and including declaratory relief, if substantial rights of the petitioner have been prejudiced because the agency action is:

    a. In violation of constitutional or statutory provisions;

    b. In excess of the statutory authority of the agency;

    c. In violation of an agency rule;

    d. Made upon unlawful procedure;

    e. Affected by other error of law;

    f. In a contested case, unsupported by substantial evidence in the record made

before the agency when that record is viewed as a whole; or

    g. Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

If our application of these standards leads us to the same conclusion as that reached by the district court, affirmance is in order. If not, reversal may be required. 280 N.W.2d at 429–30.

Iowa Code section 601A.6(1)(a) makes it an unfair or discriminatory employment practice for any person to refuse to hire or to discharge any applicant or employee because of a disability, "unless based upon the nature of the occupation." This exception has been construed as "akin to the 'bona fide occupational qualification' exception present in the federal fair employment legislation." *Cedar Rapids Community School District v. Parr,* 227 N.W.2d 486, 492 (Iowa 1975). Title VII of the Civil Rights Act provides, in pertinent part, that it shall not be an unlawful employment practice for an employer to employ an individual "on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupations qualification reasonably necessary to the normal operation of that business or enterprise . . ." 42 U.S.C.A. § 2000e–2(e) (West 1981) (Civil Rights Act of 1964).

Our first task on this appeal, then, is to review the record as a whole to determine whether the Commission's conclusion that the claimant's discharge was not "based upon the nature of the occupation" was supported by substantial record evidence. See Iowa Code §§ 17A.19(8)(f); 601A.6(1)(a); *Woodbury County v. Iowa Civil Rights Commission,* 335 N.W.2d 161 at 164 (Iowa S.Ct.1983). The hearing officer, in its proposed decision which was later adopted by the Iowa Civil Rights Commission as its own findings of fact, conclusions of law, and order on November 10, 1980, made the following findings of fact: That claimant discussed her heart condition with the store manager at the time of her appli-

cation and was told that there would be no restrictions on her work duties; that she also discussed her condition with the next acting manager and thereupon was not assigned to any jobs involving heavy lifting; that during the time claimant worked at the Burlington store only one full time employee could do any lifting, while the other three could not; that claimant's work was rated "satisfactory" in July of 1977 by the assistant manager; that the new manager, Betty Ward, did not notice for one to two weeks that claimant was not doing lifting, at which time she contacted the store operations manager for the department; and that testimony by the witnesses was fairly consistent that the store could operate more efficiently with liquor store clerks who could perform all the job functions in the job description, but that it could still operate efficiently with claimant working there without doing any lifting. We have reviewed the record and find that while conflicting evidence was presented with respect to some of these findings, each nevertheless was supported by substantial evidence. On the basis of these findings we conclude that it cannot be said that the ability to lift moderately heavy objects, albeit listed as a requisite on the job description statement, was a "bona fide occupational qualification reasonably necessary to the normal operation" of the business. 42 U.S.C.A. § 2000e–2(e) (West 1981). Petitioners have failed to show that the discharge was "based upon the nature of the occupation," *See* Iowa Code § 601A.6(1)(a), rather than on the employer's mere preference or convenience.

In *Foods, Inc. v. Iowa Civil Rights Commission*, 318 N.W.2d 162 (Iowa 1982), the Iowa Supreme Court was presented with the similar issue whether the discharge of a Dahl's cafeteria worker because of a convulsive epileptic seizure constituted an unfair employment practice in violation of Iowa Code section 601A.6. The employee had, after fourteen months of satisfactory performance of her employment duties, suffered a grand mal seizure during working hours, whereupon she was discharged three days later. *Id.* at 164. In interpreting and

applying section 601A.6, the court referred to the definition of "disability" in section 601A.2(11), "the physical or mental condition of a person which constitutes a substantial handicap, but is unrelated to such person's ability to engage in a particular occupation." The court noted that a restrictive interpretation of the definition would be ineffective to accomplish the purpose of the statute:

> A literal interpretation of [the definition] would allow an employer to discharge an employee whenever the employee's disability in any way related to his or her ability to perform the job. [Claimant's] epilepsy obviously bears some relationship to her ability to perform any job, since a convulsive seizure such as the one that led to her firing would render her unconscious, and thus unable to discharge her duties, for a brief period of time. We do not believe such a restrictive interpretation of [the definition] is justifiable, however.

*Id.* at 167. Finding that the district court erred in its determination that claimant was discharged because of the potential for harm to herself and because she had failed to disclose her epileptic condition on her application, the court concluded that substantial evidence supported the hearing officer's determination that she was terminated because she suffered a seizure on the job, a reason which was not "based upon the nature of the occupation" within the meaning of section 601A.6(1)(a). *Id.* at 167–68. We deem the reasoning of the *Foods* court to be apropos to the situation before us, and conclude that the district court erred in finding that the Commission's determination—that the lifting requirement was not a bona fide occupational qualification—was not supported by substantial evidence. In fairness, we note that the district court's decision was made prior to and thus without benefit of the guidance provided us by the Iowa Supreme Court's decision in *Foods*.

■ We believe that this determination is inextricably linked to the reasonable accommodation issue. The following Commis-

sion rule was in effect on the date of claimant's discharge:

> An employer must attempt to make a reasonable accommodation to the physical and mental limitations of an employee or applicant unless the employer can demonstrate that such accommodation would impose an undue hardship on the conduct of the employer's business. In determining the extent of an employer's accommodation obligations, the following factors shall be included: (a) business necessity, and (b) financial cost and expenses.

240 I.A.C. § 7.2(6) (1977). Petitioners argue that the Commission erred in concluding that the department failed to make reasonable accommodation to claimant's disability, and that the district court appropriately found that conclusion to be unsupported by substantial evidence. We do not agree.

In *Foods,* the evidence revealed that claimant had performed her duties capably at Dahl's for several months prior to her discharge; that all employees were expected to operate all cafeteria equipment when necessary but that claimant rarely operated certain potentially dangerous equipment; and that there were no special job duties but rather all employees were responsible for doing whatever was necessary. 318 N.W.2d at 169. The claimant's supervisor testified that it would have been inconvenient to assign claimant only the responsibilities that she could reasonably and safely handle in light of her epileptic condition, but admitted that it would have been possible. *Id.* This is precisely the type of situation which confronts us now.

Petitioner's witnesses testified that the personnel policy of the liquor department requires "equal work for equal pay" which would be violated if all of the liquor store clerks were not able to do every task. Evidence was presented that from 50 to 80 percent of a clerk's time was spent doing activities requiring heavy lifting. The evidence was conflicting as to whether claimant's handicap affected the store's efficiency. Paul Glanzman, the former Burlington store manager, stated: "There were certain jobs that she could perform even with this handicap. She could stock the shelves, because we have a track that went through the store. They put cases onto the rollers and we had started where she could just pick up a bottle any time. She could have dusted bottles, checked the loads, which required no lifting. There were numerous jobs without any hard physical labor."

Ronald Fine, personnel director for the liquor department, was asked whether the store manager could have allocated the clerks in such a way that additional hirees would not have been needed to do the lifting that claimant could not do. He replied: "It's possible, but it's not probably the most efficient and the best way to handle the situation." Of course, the most efficient way might be to hire someone built like Samson with a brain like Einstein's. Obviously, there is a dichotomy between giving a disabled person a chance for employment and striving to operate a business in the most efficient, most profitable manner. Consequently, the civil rights act does not promote efficiency but rather asks for reasonable accommodation to the disabled. The standard for judging reasonable accommodation is not one of de minimus but of "undue hardship."

The Washington Supreme Court succinctly expressed the practical necessity of accommodating the disabled.

> The physically disabled employee is clearly different from the nonhandicapped by virtue of the disability. But the difference is a disadvantage only when the work environment fails to take into account the unique characteristics of the handicapped person. (citations omitted.) Identical treatment may be a source of discrimination in the case of the handicapped, whereas *different* treatment may eliminate discrimination against the handicapped and open the door to employment opportunities.

*Holland v. Boeing Co.,* 90 Wash.2d 384, 583 P.2d 621, 623 (1978) (emphasis in original). Similarly, Chief Justice Burger found the 1964 Civil Rights Act proscribes practices that are fair in form but discriminatory in

operation. The touchstone of that act is business necessity. *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158, 164 (1971).

The *Foods* court found the evidence sufficient to support the hearing officer's conclusion that Dahl's could have accommodated the claimant's condition without "undue hardship," and was sufficient to require reversal of the district court's contrary conclusion. *Id.* Similarly, while we note that being required to accommodate employees such as the claimant may cause some inconvenience to petitioners, we cannot fathom that it would result in "undue hardship" or that her discharge was a "business necessity," that is, "necessary to the safe and efficient operation of the business." *See Robinson v. Lorillard Corp.*, 444 F.2d 791, 798 (4th Cir.1971); *Iowa Department of Social Services v. Iowa Merit Employment Department*, 261 N.W.2d 161, 167 (Iowa 1977).

Petitioners, while recognizing the impact of the *Foods* decision, argue that subsequent law indicates that the determination of what constitutes a bona fide occupational qualification or reasonable accommodation is a matter for the court to decide. If so, they reason, no attention need be paid to the rule requiring us to affirm the agency's finding if supported by substantial evidence. Petitioners cite *Armstrong's Inc. v. Iowa Dept. of Revenue*, 320 N.W.2d 623 (Iowa 1982), which decided that whether a taxpayer's failure to timely file a tax return was due to "reasonable cause" was a finding of ultimate fact, which is a matter of law. As such, the court, not the agency, draws a conclusion from the relevant facts. However, in the context of civil rights legislation the distinction made in *Armstrong* is inapposite. Tax statutes are construed to resolve doubt in favor of the taxpayer rather than to give deference to the interpretation found by the Department of Revenue. *See* 320 N.W.2d at 626. Conversely, section 601A.18 provides that the Civil Rights Act "shall be construed broadly to effectuate its purposes." The supreme court in *Foods* found that logic requires that this principle of construction also be applied to adminis-

trative rules promulgated pursuant to the rulemaking authority granted to the Commission. Logic further requires that it be applied to the matter of who determines what a bona fide occupational qualification is and whether reasonable accommodation was made. For the court to review the Commission's decision to see if it is supported by substantial evidence while arrogating to itself the independent determinations of the bona fide occupational qualification and reasonable accommodation standards would effectively eviscerate the Civil Rights Commission's role under the statute. This is clearly not the legislative intent.

Employers should not be allowed to circumvent the purpose behind Iowa Code section 601A.6(1)(a) and 240 I.A.C. § 7(2)(6) by interpreting job descriptions in a manner which will preclude otherwise capable disabled persons from engaging in gainful employment. Nor do we believe that the dissatisfaction of co-employees should be a determinative factor in the employment process. As the United States Supreme Court aptly stated with regard to a Title VII action: "If relief under Title VII can be denied merely because the majority group of employees, who have not suffered discrimination, will be unhappy about it, there will be little hope of correcting the wrongs to which the Act is directed." *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 775, 96 S.Ct. 1251, 1269, 47 L.Ed.2d 444, 468 (1976) (quoting *United States v. Bethlehem Steel Corp.*, 446 F.2d 652, 663 (2d Cir.1971)).

Petitioners complain that having to employ a disabled person could have a disastrous effect for liquor stores employing only one or two persons. Our focus in the instant case, however, is on the Commission's view of the situation at the Burlington store which employs seven people. *See Haring v. Blumenthal*, 471 F.Supp. 1172, 1181–82 (D.C.1979) (" 'undue hardship' must mean *present* undue hardship, as distinguished from anticipated or multiplied hardship"). Each case must be judged on its own merit.

At the time that petitioner Iowa Beer and Liquor Control Department terminated Leona Brown's employment, it supervised 249 individual stores located throughout the State. It employed 650 full-time and 600 part-time personnel and operated on a budget of $8.5 million. Of these 1250 employees, eleven were handicapped by a disability. Supplementing the Iowa Civil Rights Act and in effect at this time was executive order 15 signed by Governor Robert D. Ray on April 2, 1973. It stated: "The State of Iowa has a special obligation to have its operations serve as a model for business, industry, labor and education. No state official who is responsible to the governor shall therefore, in policy or in practice, discriminate on the basis of ... physical ... disability."

The district court's decision is reversed; the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

All Judges concur except DONIELSON, J., who concurs specially.

HAYDEN, J., takes no part.

DONIELSON, Judge (specially concurring).

I agree with my colleagues that petitioners were guilty of disability discrimination and that the district court's decision reversing the Commission's decision must be reversed. I write separately to express my concern over the undisputed fact that Brown's employment application was falsified so that it indicated she had no physical disability when in fact she had a heart condition preventing her from doing any heavy lifting, an important part of the job description. It is unclear from the record whether Brown herself answered the disability question falsely or if she was directed to do so. The salient point is that the application was falsified. This same situation, however, also occurred in *Foods, Inc.,* 318 N.W.2d at 164. There, the court indicated that the employee stated on her employment application that she had no "physical defects" when she in fact knew for several years that she had epilepsy. The court there did not hold such falsification precluded a finding of disability discrimination. I, therefore, agree that Brown's action or acquiescence in falsifying her application in this case is not legally sufficient to overrule the Commission's decision.